Frank HOLDER and Frank L. Redden, Appellants,

v.

UNITED STATES of America, Appellee.

No. 16168.

United States Court of Appeals Eighth Circuit.

Oct. 28, 1959.

Roy W. Meadows, Des Moines, Iowa, for appellants.

Roy L. Stephenson, U. S. Atty., Des Moines, Iowa (Richard J. Wells, Asst. U. S. Atty., Des Moines, Iowa, was with him on the brief), for appellee.

Before SANBORN, WOODROUGH and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

Appellants, Frank Holder and Frank Redden, were indicted by a Federal Grand Jury for the Southern District of Iowa, Central Division, on three counts: Count I charging appellants with interstate transportation of Delores Mae Lovelady and Jeanne Williams from Des Moines, Iowa, to Waynesville, Missouri, for the purpose of prostitution and other immoral purposes on or about February 27, 1957. Count II charged appellants with transportation of the same two females from Des Moines, Iowa, to Waynesville, Missouri, for prostitution on or about the 31st day of March, 1957. Count III charged that appellants did conspire to violate Section 2421, Title 18, by transporting or causing to be transported the same two females from Des Moines, Iowa, to Waynesville, Missouri, for the purposes of prostitution and other immoral purposes and alleged as overt acts that the appellants transported or caused to be transported, these two females from Des Moines, Iowa, to Waynesville, Missouri, for the purpose of prostitution on February 27, 1957, and March 31, 1957.

Appellants entered pleas of not guilty, were tried in the United States District Court for the Southern District of Iowa, and convicted on all three counts on January 16, 1959.

Each appellant was sentenced to five years on each count of the indictment to run consecutively. This sentence was changed on March 6, 1959, and the sentence on Count III as to each defendant was suspended and the defendant was then placed on five years' probation to commence upon the completion of the sentences on Counts I and II which were to run consecutively.

On this appeal it is contended for reversal:

That the court erred (1) in denying each defendant's motion for acquittal for insufficiency of the evidence made at the conclusion of all the evidence; (2) in overruling motions to strike the testimony of three witnesses, Betty Jean Jennings, Sherryrie Ann Howard and Tillie Jeanette Lindsey; (3) in failing to instruct the jury to scrutinize and receive with care and caution the testimony of the victims of the unlawful transportation; and (4) in refusing to give requested instructions I and II.

1. As to the evidence. There is substantial evidence to the effect that:

Defendant Holder was about thirty three years of age in 1957 and lived in Minneapolis, Minnesota, where he was engaged in operating the Clyde Hotel on which he had a three year lease. Defendant Redden was about fifty one years old and worked for Holder as a clerk in the hotel. The main business of the hotel was to provide rooms for prostitutes to carry on their vocation.

Defendant Holder had an automobile in which he and co-defendant Redden drove to Des Moines, Iowa, in the last part of February, 1957. There they spent some time at a bar called the Sepia Club and established relations with the two women referred to as the victims, Delores Lovelady and Jeanne Williams. Holder had known Jeanne Williams previously and had had sexual relations with her but the bartender introduced the others. Holder told the women about his hotel in Minneapolis and "said the girls made pretty good money up there out of the hotel. And if [they] wanted to come up there some time [they] could make money from the hotel." He explained that girls brought "dates" in and that they could make from one hundred to two hundred dollars during the week. Defendants also told the women that they were then driving to Fort Leonard Wood, Missouri, to do some gambling and that the girls "could go along and could make some money". The women agreed. They were not to go across the state line from Iowa

into Missouri in the automobile because, as defendant Holder said, "they thought they could be picked up for transporting [the girls] across state lines." Accordingly the defendants drove the women to the railroad depot in Des Moines and put them on the train for Kansas City, Missouri. The men then drove to that city in Holder's automobile and met the women there at the railroad depot. From there they drove to the Street Hotel where the women registered and paid for a room in advance with money supplied by Redden. The defendants registered at the same hotel later in the day. All the signatures of registration were identified and conceded.

The desk clerk at the hotel in Kansas City testified that he talked to defendant Holder in the hall of the hotel and Holder told him that "he had a couple of girls" and asked the clerk to make some arrangement so Holder could make some money. Holder said the girls were prostitutes. The clerk refused.

After staying one night at the hotel and on February 28, the four drove in Holder's car to the vicinity of Waynesville, close to Fort Leonard Wood, Missouri, stopping for the night at a rooming house in Lebanon, Missouri, in a large room with three beds, the men and women occupying separate beds. On March first the defendants took the women to the Cactus Club located one mile and one-half outside the Fort. There they told the women to get out and mingle with the soldiers and make dates with them but not to "take no two or three dollars"; not "to charge less than ten dollars". Defendants then went about their gambling. When they returned to escort the women back to Lebanon for the night they learned that the women had not had any "dates" and defendant Holder said "What do you think I brought you whores down here for?"

The following nights they had prostitution "dates" and Lovelady obtained about sixty dollars and Williams about thirty or forty which they turned over to defendants. All returned together to

Des Moines in Holder's car after four days at and around the Fort.

The second trip from Des Moines, Iowa, to Fort Leonard Wood was the subject of the second count of the indictment and occurred about one month later. There was some communication between Lovelady and Redden by letter and telephone with the result that the four again came together at the Sepia Club in Des Moines the last of March, 1957. On the thirty first of that month Holder again used his automobile to transport the same party of four from Des Moines, Iowa, to the vicinity of Fort Leonard Wood, Missouri. They did not use the railroad on this trip but drove directly to the same house in Lebanon and occupied the same room together as on the first trip. The women again engaged in prostitution with the soldiers, the trip coinciding with soldiers' pay days, and according to the testimony of the women they gave the proceeds of their prostitution on the second trip, which they said amounted to around three hundred dollars, to the defendants. They returned eighty dollars to a soldier who went to Lebanon and demanded and got back that amount which he had given to Williams. They made the return trip to Des Moines with Holder in his car.

Defendants each testified at length in defense. They admit that the women accompanied them across the state line on the second trip from Des Moines to the vicinity of Fort Leonard Wood and return but claim that the women crossed the state line from Des Moines to Kansas City, Missouri, on the first trip by themselves on the train and without solicitation or provision of funds by defendants. They deny paying the Kansas City hotel bill for the women and claim that the meeting at the hotel was not prearranged. They admit the four traveled from Kansas City to the vicinity of Fort Leonard Wood in Holder's car and returned in it to Des Moines and the defendants gambled with the soldiers at and near the Fort but claim they had nothing to do with prostitution by the

women. The hotel clerk's account of his conversation in the hall of the hotel with Holder was denied. Both men swore very positively that they had never taken any money obtained by prostitution from the women. Both swore that there was nothing said about prostitution in the talks with the women at Des Moines before either the first trip or the second.

■ The appellants argue that the evidence failed to establish that the defendants conceived of the immoral activities of the woman prior to the interstate transportation and cite and rely upon Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331, and Hansen v. Haff, 291 U.S. 559, 54 S.Ct. 494, 78 L.Ed. 968, but we think the point is without merit. In their testimony the defendants picture the women as the ones eager to go on the trip for the pleasure of it and themselves as reluctantly granting permission without ulterior motive. But the women said that before they went they were told at the Sepia Club they "could go along and could make some money" and were also told of the opportunities defendants afforded girls to make money by practicing prostitution in their Clyde Hotel in Minneapolis. Sending the women by train to conceal defendants' transportation of them for fear of penalty was a circumstance to be considered. The attempt to make "arrangements" to make money out of the girls as prostitutes at the Street Hotel was indicative of preconceived intent. Also, the declaration Holder made when the women failed to make dates on their first night at the Cactus Club, "What do you think I brought you whores down here for?" We think on careful consideration of all the evidence that the ruling on the motions for acquittal was without error.

■ 2. The government called three witnesses to transactions of the defendants not within the indictment for the limited purpose of showing intent. The court received the testimony for that purpose and so instructed the jury. These witnesses were prostitutes who used the Clyde Hotel to ply their trade during the relevant period. Their testimony showed defendants' intimate familiarity with the prostitutes and their knowingly providing means and receiving compensation out of the prostitution carried on in their hotel. The witness Betty Jean Jennings, in addition to testifying to numerous acts of prostitution at the hotel which were brought directly to the knowledge of both defendants, also testified concerning a trip she made to Faribault, Minnesota, in Holder's car accompanied by both appellants and another prostitute where prostitution was engaged in by the women while the men gambled and some of the proceeds of the prostitution were turned over to Holder.

It is plain that the conduct of defendants in connection with prostitution and their use of prostitutes as shown by the three witnesses threw light on the intent of defendants in procuring the women to make the trips in issue here. Here the invitation was given the victims at the first meeting at the Sepia Club in Des Moines to come to the Clyde Hotel and assurance was given them of the money to be made with the means provided by defendants for practicing prostitution there. The jury could well infer a continuing intent on the part of defendants to benefit from the receipts from prostitution. The court did not err in refusing to strike the testimony of the three prostitutes. Wiley v. United States, 8 Cir., 257 F.2d 900; Neff v. United States, 8 Cir., 105 F.2d 688.

3. The court instructed the jury fully and fairly as to their duty in passing upon the credibility of witnesses and weighing their testimony but there was no request to instruct specially in respect to the testimony of the victims Lovelady and Williams. They had been examined and cross-examined at great length and their background and character together with what had been said and done in connection with the trip were laid bare to the jury. In vital respects they were strongly corroborated.

■■ We do not find reversible error in the omission to caution the jury

about the weight to be given their testimony. Where no request for an instruction is made reversal of a judgment will rarely be made for failure to give it unless it constitutes a basic and highly prejudicial error. Cave v. United States, 8 Cir., 159 F.2d 464, 469. Such was not the situation here. Stoneking v. United States, 8 Cir., 232 F.2d 385, 391 and 392.

4. Appellants assert error in the refusal of the court to give requested instructions I and II "to the effect that if the jury found that the trip to Fort Leonard Wood was for a legitimate purpose and incidental thereto intercourse was had, the appellants would not have violated the statute."

▆▆▆▆▆ The court instructed in four instructions that the burden was upon the government to prove beyond reasonable doubt as to each defendant and each count " * * * that his purpose in transporting the women was to have them engage in prostitution * * * " and in instruction number 14:

"If a person knowingly transports or causes to be transported any woman across a state line for the purpose of prostitution, his guilt of the offense defined in the statute is complete the instant when the interstate border for entrance into the State of destination is crossed during the transportation."

These instructions made it perfectly clear to the jury that if there was any failure to prove that the defendants or either of them had the purpose they were charged with in transporting the women across the state line there should be an acquittal. Though it was open to defendants to argue that there was some other purpose than that charged, it was not incumbent on the court to hypothesize defenses for which there was no substantial support in the evidence. The instructions sufficiently informed the jury on the law.

We find the trial and convictions to be without reversible error.

Affirmed.