**UNITED STATES of America,
Appellee,**

v.

**Robert L. SAMUEL, Appellant.**

**No. 13650.**

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1970.

Decided Sept. 15, 1970.

Judgment of District Court affirmed 433 F.2d 663.

Albert J. Ahern, Jr., Washington, D. C. (Court-appointed counsel) for appellant.

David H. Hopkins, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on the brief) for appellee.

Before SOBELOFF, WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

While serving a sentence in Lorton Reformatory, defendant was convicted of the receipt, concealment and transportation of heroin hydrochloride knowing that the drug had been unlawfully imported in violation of 21 U.S.C.A. §§ 173 and 174. He received a sentence of five years, service to begin upon the expiration of the sentence he was serving at the time of the new offense. The charges against a codefendant were dismissed at the close of the government's case.

The principal evidence to support the conviction was the testimony of a fellow-inmate, Stanley Mullin, who had volunteered to become an undercover agent to ferret out narcotics traffic in the institution. Mullin testified that he had solicited drugs from the defendant. Defendant agreed to provide the drugs and, in due course, defendant delivered two ball point pens and a radio to Mullin. The pens contained capsules of heroin. The radio was to be returned to defendant with cash, representing the agreed price of the heroin, secreted in the back. Defendant testified at his trial and denied any participation in the transaction. The defense strategy was to combine defendant's denial with impeachment of Mullin to persuade the jury that Mullin had concocted the entire incident. Before defendant's trial Mullin was granted an early release, not by parole, as compensation for his services as an informer and undercover agent. This fact was made known to the jury.

Defendant asserts several errors in the conduct of the trial requiring reversal and a new trial. One, that defendant was improperly shackled while in the presence of the jury, cannot be finally ruled upon at this stage of the proceedings. The others, we conclude, do not justify reversal. We rule upon the latter and direct further proceedings with respect to the former.

–I–

Defendant claims error in the introduction of evidence of other narcotics offenses on his part. Specifically, Mullin was permitted to answer affirmatively a question of whether he had ever bought narcotics from defendant before the offense alleged in the indictment. Although he overruled an objection to the question, the district judge instructed the jury in his charge that this evidence might be considered solely in determining the defendant's state of mind or intent so as to give rise to the inference that defendant acted wilfully and with specific intent and not because of a mistake or accident or from some other in-nocent reason. He told the jurors that the evidence may not "be considered by the jury in determining whether the accused did the act charged in this indictment."

■ We perceive no error. The use of evidence of other crimes to prove a crime charged in an indictment was considered exhaustively in Lovely v. United States, 169 F.2d 386 (4 Cir. 1948), in an opinion prepared by the late Chief Judge Parker. Such evidence is admissible only where it is relevant for some purposes other than to show that the accused, because he is a man of criminal character, committed the crime charged. C. McCormick, Evidence (1954 Ed.) § 157. Two permissible uses are to prove the motive of the accused and to show that his act was not inadvertent, accidental, unintentional or without guilty knowledge. United States v. Dornblut, 261 F.2d 949 (2 Cir. 1958); Lovely v. United States, *supra.* The challenged evidence fell within these permissible uses. Both motive and lack of innocent action tended to be proved by evidence that defendant had dealt safely with Mullin on other occasions and, therefore, thought that he could deal again with impunity.

Even when the use of such evidence is apparently permissible, C. McCormick, Evidence, *supra,* p. 332, suggests that admissibility should be determined not by rote but by the exercise of discretion "balancing, on the one side, the actual need for the other-crimes-evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes-evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility." Even applying the McCormick test, we find no abuse of discretion on the part of the district judge.

■ The indictment charged a violation of 21 U.S.C.A. § 174 which presumes guilt from actual possession of an illegally imported narcotic drug unless an

accused explains the possession to the satisfaction of the jury. Proof that the drug possessed was known to be a narcotic is a first step in invoking the presumption; proof of such knowledge could be inferred from proof of repetitive possession and handling on prior occasions. Moreover, proof of motive was not irrelevant, although ultimately it may have been unnecessary in this case, since defendant did not claim innocent possession but rather denied any possession. However, defendant did not deny possession until after the challenged evidence had been received. The admissibility of the challenged evidence should be determined at the time it was admitted and not governed by hindsight. The jury knew the background of Mullin and the fact that he was rewarded for his efforts. The probative value of his uncorroborated assertion that he had purchased narcotics from defendant was, therefore, minimal. More importantly, the district judge instructed the jury unequivocally at length on the limited relevance of the other-crimes-evidence. We thus conclude that even if the district judge may have excluded the evidence under the McCormick test, he did not abuse his discretion in admitting it.

–II–

Orange C. Dickey, a general investigator for the Department of Corrections of the District of Columbia, was called as a government witness at the trial. He participated in the narcotics investigation at Lorton, and he dealt with the informer Mullin. During Dickey's cross-examination by counsel for the codefendant, he was asked about the reports Mullin had made to him. He was permitted to testify that Mullin had said he would be able to buy narcotics on a given date because he had heard that two men were receiving them. Over objection on the ground that it was inadmissible hearsay, he was permitted to testify that the two to whom he referred were defendant and his codefendant. The district judge overruled the objection on the ground that Dickey was testifying to the

fact of the report, and he told the jury that the statements were not to be taken as the truth of the matter asserted.

If admitted to prove the truth of the matter, Dickey's testimony of Mullin's identification of defendant as a future seller of narcotics would have been inadmissible hearsay. It would have been safer for the district judge to sustain the objection to preclude the jury's misunderstanding its relevance. But as proof of the fact of a report, the evidence was admissible, and the district judge immediately made known to the jury the limited purpose for which the evidence could be considered. If prejudice was nevertheless created, it was obviated by the subsequent testimony of Mullin that he talked to defendant about the purchase of drugs, that defendant had agreed to sell them and that Mullin had reported the conversation to Dickey. Statements by defendant of this nature were admissions, and Mullin's repetition of them before the jury did not violate the rule against hearsay. Because Mullin substantially repeated Dickey's testimony and was present for cross-examination, any error in admission of Dickey's testimony in the manner complained of was harmless.

–III–

In his effort to impeach Mullin, defendant's counsel cross-examined Mullin about prior convictions. He was allowed to elicit the offenses themselves and, in several instances, he brought out the date of the conviction and the punishment. He complains, however, that he was not permitted to probe in depth the nature of the felonies, when they occurred, and their details. The limitations which the district judge imposed were not erroneous. United States v. Senior, 274 F.2d 613 (7 Cir. 1960); United States v. Tomaiolo, 249 F.2d 683 (2 Cir. 1967); McCormick, *supra*, § 43, pp. 92–93.

Nor was there error on the part of the district judge in limiting cross-examination of Mullin concerning his re-

lease from prison. Three times the district judge told the jury that Mullin had been granted an early release in consideration, in part, for his services as an informer. Both in regard to prior convictions and early release, defendant obtained a sufficient basis for impeaching Mullin's credibility.

–IV–

Finally, defendant contends that it was error to require him to appear continuously before the jury while handcuffed, even while testifying. His codefendant received the same treatment. Timely objection and a request that the handcuffs be removed was made, but their removal was denied.

Our difficulty is in understanding the reasons of the district judge for his ruling. The district judge stated that both defendants were inmates of Lorton, that the jury would learn this fact during the trial and that "they [the handcuffs] will not cause any harm." He referred to the nature of the charge, that both defendants had been convicted of crimes of violence (defendant Samuel of murder), and that "[w]e have had some difficulty over here [presumably the courthouse in which the trial was conducted]." Although counsel for defendant reported that the Marshal had asked him "if the cuffs are to be taken off," the district judge replied "[l]eave the cuffs on unless the Marshal allows it. I am not going to have them taken off." Finally, when counsel requested that there be included in the record evidence to justify the procedure to be followed, the following colloquy ensued:

> THE COURT: So the record is clear, it is necessary for the safety of the people. There have been some very strong charges, if you might want to know, and I am sure you may have heard, both to the Marshal and the F.B.I. that certain people are proposing to point out and maybe even harm certain witnesses in this Court who is the alleged principal witness, the undercover agent, and this Court is not about to allow any conduct of that kind.

> I mean I am surprised that you would indicate that I should.

> MR. AHERN: I didn't—I wanted to know the reason, your Honor.

> THE COURT: You didn't know anything about it.

> MR. AHERN: No, I didn't know about it.

> THE COURT: Well, there is some strong evidence and we have several outside guards—if any strangers coming in here point out any so-called undercover agent and as much as raise an eyebrow at him—the guards are going to get the full support of the Court as far as any punishment. So I would not think of standing still for it.

This explanation failed to suggest who was suspected of doing the pointing out and who was suspected of planning to inflict harm.

When defendant was about to testify, his counsel asked that the handcuffs be removed during his testimony, but the district judge refused, reminding counsel that defendant was not required to testify and asserting that "we have had difficulties in courtrooms" and that "it [the apprehension of defendant on the pending charges] was a set up job * * * this is not alleged to be a Sunday school affair * * *." The district judge did permit defendant to take the witness chair before the jury entered the courtroom to enable him to conceal his handcuffs.

Basic to American jurisprudence is the principle that an accused, despite his previous record or the nature of the pending charges, is presumed innocent until his guilt is established beyond a reasonable doubt by competent evidence. It follows that he is also entitled to the indicia of innocence. In the presence of the jury, he is ordinarily entitled to be relieved of handcuffs, or other unusual restraints, so as not to mark him as an obviously bad man or to suggest that the

fact of his guilt is a foregone conclusion.

However, the right to the indicia of innocence is a relative one. The judge presiding at the trial, the jurors, courtroom personnel and spectators are entitled to security in the performance of their functions or in observing the trial. The members of the public out of the courtroom are entitled to security in the pursuit of their daily activities. The public also has an interest in the expeditious trial of persons accused of crime, and an interest in preventing the guilty from being at large and committing other offenses. Thus, in appropriate circumstances, the accused's right to the indicia of innocence before the jury must bow to the competing rights of participants in the courtroom and society at large. *Cf.* Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

The cases traditionally state that accommodation between these conflicting interests lies within the discretion of the district judge. It is he who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes. *E. g.*, Gregory v. United States, 365 F.2d 203 (8 Cir. 1966); Guffey v. United States, 310 F.2d 753 (10 Cir. 1962). As a discretionary matter, the district judge's decision with regard to measure for security is subject to limited review to determine if it was abused. We stress that the discretion is that of the district judge. He may not, as is suggested at one part in the record before us, delegate that discretion to the Marshal. Of course, he should consult with the Marshal when other than ordinary security such as the general presence of guards in the courtroom is contemplated, and he may rely heavily on the Marshal's advice as to what may be required since it is the Marshal who has the experience in the keeping of prisoners and who must provide the guards and bear the major responsibility if untoward incidents occur.

Unless the district judge's discretion is to be absolute and beyond review, the reasons for its exercise so as to require special security measures, must be disclosed in order that a reviewing court may determine if there was an abuse of discretion. *Cf.* United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970). Whenever unusual visible security measures in jury cases are to be employed, we will require the district judge to state for the record, out of the presence of the jury, the reasons therefor and give counsel an opportunity to comment thereon, as well as to persuade him that such measures are unnecessary. In that manner we will be enabled readily to determine if there has been an abuse of discretion. We will not require the formal taking of evidence on the subject in the usual case, but a district judge may conclude to take evidence and making findings if the factual need for extraordinary security is controverted. This requirement will apply to all criminal jury cases, the trial of which begin after the date of the filing of this opinion.

In the instant case we cannot say that the present record shows no abuse of discretion on the part of the district judge in requiring defendant to be tried in handcuffs. Not every defendant who is in custody under previous sentence and who is accused of the commission of a crime while in a penal institution should be tried before a jury shackled in handcuffs or subjected to other unusual security measures. We reject the government's argument that because defendant was tried for a crime allegedly committed while he was incarcerated on another conviction and hence that the jury was bound to learn that defendant was a convicted felon, alone, made the wearing of handcuffs during the trial non-prejudicial. Certainly, this was a factor which the district judge in his discretion might consider, but any unusual restraint, or any presence of guards other than an unobtrusive complement of security officers, is bound to have some prejudicial effect and can be justified only upon a showing of its

necessity. At the same time, the record suggests, but does not establish clearly, the presence of other factors which, together with those disclosed by the record, may have made the measures employed eminently reasonable.

Since the rule we establish is prospective only, we conclude, therefore, to postpone ultimate decision on this point at issue at this time, and following the procedure we adopted in United States v. Greenwell, 418 F.2d 845 (4 Cir. 1970), 418 F.2d 846 (4 Cir. 1970), to request the district judge to supplement the record with a succinct statement of all the reasons and facts and matters from which he concluded to require defendant to be tried before a jury while wearing handcuffs. Within ten days after the filing of such a statement, copies of which shall also be mailed to counsel, counsel may file a memorandum with the Clerk commenting on the legal sufficiency thereof to sustain the action taken. When the information is obtained, we will proceed to final decision.

Order in accordance with opinion.