UNITED STATES of America,
Plaintiff-Appellee,

v.

Ramon Cardova ESQUER, Defendant-
Appellant.

No. 71–1264.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1972.

Decided April 18, 1972.

William C. Erbecker, Indianapolis, Ind., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Ronald A. Lebowitz, Jeffrey F. Arbetman, Asst. U. S. Attys., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

Appellant, Ramon C. Esquer, was convicted by a jury for the murder of Joseph Terry Madden in violation of 18 U.S.C. § 1111.[1] Esquer appeals to this court alleging that the evidence was insufficient to support the conviction and that, even if sufficient, the conviction cannot be allowed to stand due to certain erroneous rulings by the district judge and prejudicial comments by the prosecuting attorneys.

While most of the evidence is in conflict, it is undisputed that Madden's death was a result of three stabwounds inflicted by the appellant. The government charged and the jury concluded that appellant premeditatively attacked and killed Joseph Madden. Esquer offered proof that the death occurred as a result of his efforts to defend himself against an armed attack by the victim.

The appellant and victim, as well as virtually all the 29 witnesses who testified at trial, were inmates at the United States penitentiary at Marion, Illinois. It appears from the record that on November 30, 1969, during the noon meal, a sudden altercation between the deceased and the appellant occurred in the prison dining room. That altercation left Madden mortally wounded.

The details of the incident are in sharp conflict. The government offered testimony by two inmates that Esquer, who worked in the serving line in the dining room, left his position behind the steamtable, walked to the center of the room where the deceased was sitting and attacked him from behind by seizing him around the neck with his arm and stabbing him in the back. These witnesses further testified that, as Madden slumped to the floor, Brown, a companion, left the table and fled toward the door. Appellant then turned and chased after Brown, but was intercepted by two prison guards who overpowered and disarmed him. This version of the incident is partially corroborated by the guards, who, although they did not see the actual stabbing, testified that they saw an inmate being chased through the dining room by appellant Esquer. Their testimony shows, additionally, that at the time they apprehended the appellant he had the murder weapon in his hand. Finally, the government produced the examining pathologist who testified that the cause of death was one of three deep puncture wounds in the deceased's back.

The appellant's version of the incident is substantially different. He offered the testimony of 19 inmates who testified with varying degrees of detail that, as Esquer walked behind the deceased's table, the deceased sprang up to attack him with a knife which he had concealed in his lap. Esquer, who was uniformly described as athletic, avoided the attack and wrestled with his assailant. No witness was able to relate how Esquer got possession of the knife or how the wounds were inflicted, but there is substantial testimony that it was the appellant who was first attacked. The testimony of these defense witnesses also contradicts the government's testimony that the appellant was chasing Brown.

---

1. Title 18, section 1111, of the United States Code provides in pertinent part:
   "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree."

Their version has the appellant being chased by Brown.

With respect to the sufficiency of the evidence, the appellant argues that the trial court erred in denying defense motions for directed verdicts both at the close of the government's case and at the conclusion of all the evidence. It seems clear, however, that even though the facts surrounding the homicide were in sharp dispute, the testimony by government witnesses that the defendant attacked the decedent from behind was sufficient to allow the case to go to the jury.

■ In determining sufficiency, the appellate court must weigh the evidence and the reasonable inferences which can be drawn from that evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Zimmerman, 326 F.2d 1, 3 (7th Cir. 1963); United States v. Coduto, 284 F.2d 464, 466 (7th Cir. 1960), cert. denied, 365 U.S. 881, 81 S. Ct. 1027, 6 L.Ed.2d 192 (1961). Applying that standard, we believe there was sufficient proof to support the verdict.

What appellant actually seeks here is appellate review of issues which would require this court to substitute its judgment as to the credibility of the witnesses for that of the jury. This we cannot do. As Mr. Justice Clark recently observed in United States v. Karigiannis, 430 F.2d 148, 151 (7th Cir.), cert. denied, Panagiotapoulos v. United States, 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141 (1970), "Questions of credibility have no bearing on the insufficiency of the evidence as a whole . . . and are not for the reviewing court's decision." This court has frequently followed a similar rationale in holding that "it is not the province of the Court of Appeals to retry the case, weigh the evidence or determine the credibility of witnesses." United States v. Miles, 401 F.2d 65, 67 (7th Cir. 1968); United States v. Jones, 302 F.2d 46, 47 (7th Cir. 1962); United States v. Ziemer, 291 F.2d 100, 102 (7th Cir.), cert. denied, 368 U.S. 877, 82 S.Ct. 120,

7 L.Ed.2d 78 (1961). This precedent is not without cogent foundation, for as Mr. Justice Jackson noted in Ashcraft v. Tennessee, 322 U.S. 143, 171, 64 S.Ct. 921, 934, 88 L.Ed. 1192 (1944) (dissenting opinion), "a few minutes' observation of the parties in the courtroom is more informing than reams of cold record."

■ Appellant's first allegation of trial error concerns the security precautions taken during the testimony of defense witness Castillo, a maximum-security prisoner. Castillo, who had acted as an interpreter for the defendant and for his attorney in preparation for trial, was forced to testify while shackled with handcuffs. Relying upon the recent Supreme Court decision, Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the appellant urges that such excessive security destroyed the credibility of his defense and thereby deprived him of a fair trial. While the Court in *Allen* allowed trial judges great latitude in determining the measures to be used to maintain order in their courtrooms, it expressed a view that judges should employ the least drastic means to reach that end. We agree with the appellant that the shackling of witnesses is an unfortunate and undesirable practice which should be employed only in cases of extreme need.

■ It is our view, however, that in this case the prejudice which might have flowed from the use of handcuffs on witness Castillo did not rise to the level of reversible error. The testimony of this witness does not appear to have been vital to the defense. Indeed, his testimony related only to certain physical features of the isolation block in the Marion penitentiary, which the government contended allowed defense witnesses to discuss their testimony prior to trial. He could offer no testimony on the actual events surrounding the crime. In such a situation, without some showing of actual prejudice, the conviction must be allowed to stand. This conclusion should not, however, be interpreted as approval of the practice of shackling

witnesses; on the contrary, such a practice is inconsistent with our basic concepts of justice and should be resorted to only in exceptional situations.

■ The second ground for reversal urged by the appellant concerns the trial judge's refusal to propound appellant's requested questions on *voir dire*. We have examined the list of questions presented by the appellant and have compared that list to the *voir dire* questions actually asked by the judge. We find that substantially all the requested inquiries were made by the trial judge. It is true that they were not in every case made in the form submitted, but in substance the defendant received virtually all the information specifically requested. In addition, a review of the *voir dire* as a whole leads us to the conclusion that it made "sufficient inquiry as to the background and attitudes of the jurors to enable the litigants, not only to challenge for cause, but to exercise their peremptory challenges." Spells v. United States, 263 F.2d 609, 611 (5th Cir.), cert. denied, 360 U.S. 920, 79 S.Ct. 1439, 3 L.Ed.2d 1535 (1959).

Appellant next complains of the trial judge's failure to instruct the jury on the issue of self-defense. It is contended that the judge, having been apprised of the defendant's desire to have a self-defense instruction given, had an obligation to so instruct the jury even though appellant failed to prepare and offer an instruction on this defense.[2] *Cf.* United States v. Napue, 401 F.2d 107, 112

(7th Cir. 1968), cert. denied, 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1969).

Rule 30 of the Federal Rules of Criminal Procedure governs jury instructions. It provides in part:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. . . . No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury."

In this regard, it is necessary to point out that, other than to imply during the conference on instructions that a self-defense instruction was appropriate, defense counsel did not object to the instructions as they were read to the jury. Indeed, when the trial judge asked both the prosecution and the defense attorneys whether they had any objections to the instructions, counsel for the defendant replied that he had none.[3] Although it is clear that under Rule 30 failure to make specific objection to the charge is sufficient to remove the issue from appellate review, in this case we need not rely on a theory of waiver.

2. While it is true that the defendant raised the question of an instruction on self-defense, the colloquy set out below indicates that defense counsel was less than diligent in pursuing this issue. Indeed, the record shows no further attempt to prepare or offer such an instruction even though the court had expressed a willingness to entertain argument on the question.

"MR. ERBECKER: Are you going to give one on self-defense?
THE COURT: Do you have any?
MR. ERBECKER: I don't have any.
THE COURT: Well, you have got to

have instructions. You can't ask the Court to write your instructions for you. It is not this Court's job to write instructions for attorneys."

3. Having read the instructions to the jury, the trial judge requested counsel to approach the bar; out of the hearing of the jury, the following colloquy occurred:

"THE COURT: Does the government have any exceptions or objections to the Court's instructions?
MR. LEBOWITZ: No, your Honor.
THE COURT: Does the defendant?
MR. ERBECKER: None, your Honor."

There is substantial authority for the proposition that error cannot be assigned to the failure to instruct on an issue where no request for such an instruction is made. United States v. Meyers, 443 F.2d 913 (9th Cir. 1971); United States v. Biggerstaff, 383 F.2d 675 (4th Cir. 1967); Smoot v. United States, 114 U.S.App.D.C. 154, 312 F.2d 881 (1962); United States v. Passero, 290 F.2d 238 (2d Cir.), cert. denied, 368 U.S. 819, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); Apel v. United States, 247 F.2d 277 (8th Cir. 1957); Obery v. United States, 95 U.S.App.D.C. 28, 217 F.2d 860, cert. denied, 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255 (1954). Further, as this court recently noted in United States v. Bessesen, 445 F.2d 463, 468 (7th Cir. 1971), "The primary responsibility rests with counsel to make fair and proper requests to charge." *See also* United States v. Leach, 427 F.2d 1107, 1113 (1st Cir.), cert. denied, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970); United States v. Hamilton, 420 F.2d 1096, 1099 (7th Cir. 1970).

This is not to say that in all cases the failure to request an instruction will vitiate any error resulting from its omission. On the contrary, where the failure to instruct "constitutes basic and highly prejudicial error," reversible error exists regardless of the defendant's failure to have requested the instruction. Franano v. United States, 310 F.2d 533 (8th Cir.), cert. denied, 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694 (1962); Holder v. United States, 271 F.2d 214 (8th Cir.), cert. denied, 361 U.S. 933, 80 S.Ct. 372, 4 L.Ed.2d 354 (1959). However, from the arguments of counsel and the record before us, we are not convinced that the failure to read a specific, separate, charge on the self-defense issue was "highly prejudicial" to the defendant in this case.

As pointed out in *Bessesen*, "[j]ury instructions must be considered in their entirety." *Bessesen, supra*, 445 F.2d at 468. In considering the instructions given in the instant case, we find that the court gave adequate instruction on the issue of self-defense. Indeed, the charge contained specific reference to the issue of self-defense:

"If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm and that deadly force was necessary to repel such danger, he was not required to retreat or to consider whether he could safely retreat. He was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to save his life or protect himself from serious bodily harm.

"However, if the defendant could have safely retreated but did not do so, his failure to retreat is a circumstance which you may consider, together with all other circumstances, in determining whether he went farther in repelling the danger, real or apparent, than he was justified in doing under the circumstances."

Although it is true that this instruction relates primarily to the duty of retreat, we believe it does adequately inform the jury that one who is attacked has the right to use force to defend himself. A stronger self-defense instruction might have been given had the defense offered one, but in the absence of a proffered instruction, this charge was adequate.

Finally, the appellant contends that he was denied a fair trial by improper and prejudicial remarks made by the judge and prosecutor. We have thoroughly examined the record with regard to these allegations and find them without substance. A trial judge is at liberty to question a witness to clarify a particular point, and where, as here, he does so without engaging in advocacy or displaying prejudice or partiality, no error can be predicated upon such examination.

Similarly, the judge has the power to cure potential error caused by overzealous advocacy on the part of a prosecutor by admonition and instruction to disregard. The prosecutor's con-

duct here complained of was objected to by the defense, the objections were sustained by the trial judge and in every case the jury was instructed to disregard the comment. This, we believe, was sufficient to correct any conceivable prejudice occasioned by the remarks.

Having found sufficient evidence to support the jury's verdict and no reversible error, the conviction must be affirmed.

Affirmed.