**Alfred Ronnie HARRELL,
Petitioner-Appellant,**

v.

**Thomas R. ISRAEL, Warden, and Attorney General of the State of Wisconsin,
Respondents-Appellees.**

**No. 81–1804.**

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 10, 1982 *.

Decided March 15, 1982.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P. (effective Aug. 1, 1979); Circuit Rule 14(f). No statement requesting oral argument having been filed, the appeal has been submitted on the briefs and record.

Mark Lukoff, Wis. Public Defender, Milwaukee, Wis., for petitioner-appellant.

Kirbie Knutson, Asst. Atty. Gen., Madison, Wis., for respondents-appellees.

Before BAUER, WOOD and POSNER, Circuit Judges.

PER CURIAM.

This is an appeal from the denial of a petition for habeas corpus. The petitioner, Alfred Ronnie Harrell, alleges that he was denied due process because both he and his witness were required to wear leg irons throughout his trial. We affirm the judgment of the district court denying the petition.

I

On July 14, 1978, Alfred Ronnie Harrell, an inmate at the Wisconsin State Prison, a maximum security institution at Waupun, was tried by a jury in the Circuit Court for Dodge County on an information charging him with assault by a prisoner, contrary to sec. 946.43(2), Wis.Stats. Conviction carried a maximum penalty of ten years imprisonment. According to the complaint, Harrell had physically attacked a corrections officer at the prison on November 15, 1977. Harrell denied the charge, claiming that he had acted in self-defense. Another inmate who had witnessed the incident supported his claim.

Before the trial began, the state trial judge, believing security to be of genuine concern, ordered that the leg irons which Harrell and his witness had worn while being transported from the prison would remain on them during trial. However, the handcuffs they had worn were to be removed. To guard against possible prejudice, the trial judge also ordered that certain precautions be taken so that the jury would not be allowed to focus on the leg irons.[1] He first instructed the sheriff that the jury was not to be brought into the courtroom until Harrell was seated at counsel table where the leg irons could not be seen. Next, when either Harrell or his inmate witness was to testify, arrangements were to be made so that they would be seated in and leave the witness box outside the presence of the jury. After outlining the procedure that was to be followed, the trial judge offered petitioner an opportunity to respond. Neither Harrell nor his counsel made any objection at the time.

Despite these precautions, it appears that it may have been possible for a few of the jurors to have seen that Harrell and his witness were wearing leg irons. The witness box from which they testified was approximately four feet from the jury. Although the front portion of the box was enclosed, enabling Harrell and his witness to conceal the fact that they were wearing leg irons from a majority of the jury, it was at least possible that the leg irons were visible to four jurors if some effort were made on their part to look around the enclosure.

At the conclusion of the trial, the jury found Harrell guilty as charged. Harrell filed a motion for a new trial, alleging that the shackling of both himself and his witness prevented him from receiving a fair trial. The trial court denied the motion and was affirmed on appeal by the Wisconsin Court of Appeals. The Wisconsin Supreme Court denied a petition for review.

His state remedies exhausted, Harrell filed for habeas relief in the district court. The petition was denied. The district court concluded that the trial judge had used what in his discretion he saw to be an unobtrusive method of insuring security. It stated that the precautions taken by the trial court prevented the jury from being constantly reminded of the restraints, and any alternative, such as stationing deputy sheriffs around the courtroom, would have been no less intrusive. The district court also noted that the nature of the charge against Harrell, assaulting a prison guard, required that the jury know he was an inmate in a state prison. Thus, the shackling told them nothing they were not al-

---

1. The record clearly reflects the trial judge's concern for a fair trial. In advising petitioner of the procedures that were to be followed, the judge stated:

 The court does not wish to have before a jury in the interests of a fair trial, a parade of prisoners going back and forth across the courtroom in manacles. That is not to be tolerated.

ready aware of. Under these circumstances, the district court concluded the trial court had not abused its discretion in ordering that Harrell and his witness remain shackled.

## II

As a general rule, a defendant in a criminal case has the right to appear before the jury free from shackles or other physical restraints. *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970); *Kennedy v. Cardwell*, 487 F.2d 101 (6th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974); *United States v. Samuel*, 431 F.2d 610 (4th Cir. 1970). *See generally* Annot., 90 A.L.R.3d 17 (1979). This right springs from the basic principle of American jurisprudence that a person accused of a crime is presumed innocent until his guilt has been established beyond a reasonable doubt.[2] *Samuel*, 431 F.2d at 614. For this presumption to be effective, courts must guard against practices which unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion. As one court has observed, if a defendant is to be presumed innocent, he must be allowed the indicia of innocence.[3] *Id. See also Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976).

Concomitant to the defendant's right to appear before the jury without physical restraints is his right to have his witness appear that way also. *United States v. Roustio*, 455 F.2d 366, 371 (7th Cir. 1972). Although the shackling of defense witnesses may be less prejudicial to the accused because it does not directly affect the presumption of innocence, *Kennedy v. Cardwell*, 487 F.2d at 105 n.5, it nevertheless may harm his defense by detracting from his witness' credibility. *United States*

*v. Garcia*, 625 F.2d 162 (7th Cir.), *cert. denied*, 449 U.S. 923, 101 S.Ct. 325, 66 L.Ed.2d 152 (1980). Thus, the general rule against the use of physical restraints in the courtroom applies to defense witnesses as well as the defendant himself.

Notwithstanding the importance of this rule to insuring a fair trial, a defendant's right to appear and to have his witnesses appear without restraints is not absolute. In *Illinois v. Allen*, 397 U.S. at 344, 90 S.Ct. at 1061, the Supreme Court stated that binding and even gagging a defendant is permissible when necessary to control contumacious conduct at trial. The use of physical restraints has also been upheld in the absence of disruptive conduct at trial where the trial court has reason to believe it is necessary to maintain the security of the courtroom. *Loux v. United States*, 389 F.2d 911, 919 (9th Cir.), *cert. denied*, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968). As the *Samuel* court recognized:

> The judge presiding at the trial, the jurors, courtroom personnel and spectators are entitled to security in the performance of their functions or in observing the trial. The members of the public out of the courtroom are entitled to security in the pursuit of their daily activities. The public also has an interest in the expeditious trial of persons accused of crime, and an interest in preventing the guilty from being at large and committing other offenses. Thus, in appropriate circumstances, the accused's right to the indicia of innocence before the jury must bow to the competing rights of participants in the courtroom and society at large. *Cf. Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

431 F.2d at 615.

Because of the potential for prejudice, this court has required a showing of

2. Though not articulated in the Constitution, the presumption of innocence is considered a basic component of the right to a fair trial guaranteed by the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976).

3. Two other reasons which have been given for the rule against using physical restraints on the

accused are: 1) the use of such restraints may interfere with the accused's ability to assist in his own defense; and 2) the use of such restraints is an affront to the dignity of judicial proceedings. *Illinois v. Allen*, 397 U.S. at 344, 90 S.Ct. at 1061. Neither of these reasons is pressed or seems applicable in this case.

"extreme need" to justify the use of physical restraints at trial. *United States v. Garcia*, 625 F.2d at 162; *United States v. Esquer*, 459 F.2d 431 (7th Cir. 1972), *cert. denied*, 414 U.S. 1006, 94 S.Ct. 366, 38 L.Ed.2d 243 (1973). However, the trial judge has wide discretion in determining whether that standard is met. *Garcia, supra.* "It is he who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes." *Samuel, supra*, at 615.[4]

This court has twice upheld the use of shackles on defense witnesses who were inmates of maximum security prisons and whose records reflected a propensity for violence or escape. *United States v. Roustio; United States v. Garcia.*[5] However, in *United States v. Esquer*, 459 F.2d at 433, the court held that the trial court's shackling of a defense witness in handcuffs simply because he was an inmate at a maximum security prison was unjustified. The witness' status as a maximum security prisoner, the court held, did not by itself constitute the exceptional circumstances needed to justify the use of such drastic measures. The court went on to hold, however, that the resulting prejudice in that case did not rise to the level of reversible error.

■ In light of these cases, it would appear that the trial court's order that petitioner and his witness remain in leg irons throughout the trial may not have been fully justified under the circumstances presented here. There was no showing that either had ever attempted to escape or disrupt a trial. Although the trial court subsequently referred to the nature and seriousness of the charge against petitioner as a possible justification for its shackling order in denying petitioner's motion for a new trial, this does not explain why his witness, who had not been charged with any crime, was also required to wear leg irons. Because the general rule against the use of physical restraints at trial applies to defense witnesses, as well as the defendant himself, it is not enough for the state to show that the use of such restraints on petitioner was justified. It must be shown that the extreme need standard was met as to his witness as well. No such showing was made here. Instead, it appears that the trial court's shackling order was intended as part of a new policy to be followed in all future cases involving prison inmates.[6] Such a policy would seem inconsistent with previous decisions in this and other circuits. *See United States v. Esquer; Kennedy v. Cardwell; United States v. Samuel. See also People v. Duran*, 16 Cal.3d 282, 127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1 (1976); *State v. Hartzog*, 26 Wash.App. 576, 615 P.2d 480 (1980).

■ However, this case differs from previous decisions involving the use of physical restraints in that here the trial judge made every effort and, insofar as the record shows, was successful, at least for the most part, in preventing the jury from becoming aware of the restraints. In all of the previous cases, little or no attempt was made to hide from the jury the fact that the accused

---

4. Normally, where the use of physical restraints is being considered, the trial court should conduct a hearing on the matter outside the presence of the jury and state for the record the reasons for such action. This will allow a reviewing court to determine more readily whether there was an abuse of discretion. *United States v. Theriault*, 531 F.2d 281, 285 (5th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976).

5. Although the extreme need standard was not met as to all of the inmate-witnesses in *Garcia*, the court nevertheless upheld the district court's blanket handcuff order on the ground that it was less prejudicial than handcuffing only those shown to be violent. "To handcuff only some of the inmates well might have been more prejudicial to the defense than handcuffing them all as it likely would have wholly destroyed the credibility of the handcuffed few." 625 F.2d at 168.

6. In instructing the sheriff on the procedures that were to be followed in this case, the trial judge announced he was "making a rule for all future cases tried in the Circuit Court for Dodge County when security is a problem, and it always is when it involves a person who is in the Wisconsin State Prison...."

or his witness was shackled. This distinction is by no means insignificant. For the harm to be avoided in this situation is not the shackling itself but the prejudice that could result if the jury were allowed to continuously view the defendant restrained in that manner. Such a sight, it is feared, could instill in the jury a belief that the defendant is a dangerous individual who cannot be controlled, an idea that could be devastating to his defense.

The record clearly reflects the trial judge's appreciation and concern for this problem. *See*, note 1, *supra.* As the district court noted in its decision denying the petition:

> To state, as petitioner does, that he was "shackled in leg irons" conjures up images of dungeons, sounds of chains rattling on the courtroom floor and legs dragging as petitioner approaches the witness stand. When the record is viewed, however, it is clear that those images must be erased. The trial judge ordered that the prisoners would wear leg irons, but that all possible precautions would be taken to prevent the jury from focusing on the leg irons. He also ordered that neither petitioner nor his witness would wear handcuffs.

Furthermore, even though a defendant's or witness' status as an inmate of a maximum security prison has been found insufficient by itself to establish the "extreme need" necessary to justify the use of physical restraints in the absence of such precautions, that status does present cause for concern. Presumably, a person confined in a maximum security institution has committed at least one serious breach of the law. With respect to that offense, he is not presumed innocent. Should such a person, facing the possibility of a substantial sentence on a second prison-related offense, harbor any thoughts of escape, revenge or violence, the courtroom would provide the most obvious opportunity to act on them. Less intrusive methods of insuring security, such as stationing guards around the courtroom, would probably be less effective and may have an even more detrimental impact on the jury than shackles.

In light of the danger inherent in these circumstances and the precautions taken by the trial court in this case, we conclude that petitioner suffered no denial of due process. The fact that petitioner and his witness were prisoners of a maximum security institution justified the state trial judge's concern for courtroom security, and the steps taken by him to hide the leg irons from the jury's view adequately protected petitioner from the possibility of prejudice. Although several jurors may have observed the leg irons, despite these precautions, when petitioner and his witness were testifying, this fact does not require granting the petition. Courts have generally found brief and inadvertent confrontations between a shackled accused and one or more members of the jury insufficient to show prejudice. *See e.g. United States v. Figueroa-Espinoza*, 454 F.2d 590 (9th Cir. 1972); *United States v. Leach*, 429 F.2d 956 (8th Cir. 1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); *Hardin v. United States*, 324 F.2d 553 (5th Cir. 1963). We see no reason why a different result should obtain here.

 It is also significant that petitioner raised no objection to the trial judge's shackling order when it was first issued. In an analogous context, a defendant's failure to object to being tried in prison garb was found by the Supreme Court to negate his claim that he was compelled to stand trial in such attire against his will. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). The Court reasoned in *Estelle* that because a defendant may elect to wear prison clothing in an attempt to elicit sympathy from the jury, a due process claim based on that fact could not be sustained on appeal in the absence of a showing that the defendant had been forced to appear in prison clothing over his specific objection. Although we do not rely solely upon the rationale of *Estelle* for our conclusion here, we find the fact that petitioner did not object supportive of our conclusion that the trial judge did not abuse his discretion. Had some objection been made, fuller

consideration could have been given the issue and lesser alternatives considered.

█ Finally, the fact that petitioner was standing trial for assaulting a prison guard required the jury to know that both he and his witness were inmates of a maximum security prison. Given the nature of such institutions, it is not unreasonable to assume that the jury would naturally expect that when inmates appear in court, either as parties or witnesses, adequate security measures would be taken. Under these circumstances, we will not assume that the inconspicuous use of physical restraints shown here caused undue prejudice to the accused.

█ This is not to say that we condone a general policy of trying prison inmates in leg irons. We remain convinced that "the shackling of [defendants or] witnesses is an unfortunate and undesirable practice which should be employed only in cases of extreme need." *United States v. Esquer*, 459 F.2d at 433. Whether that standard is met with respect to a particular party or witness should be determined on a case-by-case basis by considering the person's record, the crime charged, his physical condition, and other available security measures. Although extreme need may not have been shown here with respect to both petitioner and his witness, we conclude that the precautions taken by the trial court prevented any error of constitutional magnitude. The judgment of the district court denying the petition is therefore affirmed.