## STATE OF CONNECTICUT *v.* STANLEY WILLIAMS
### (11692)

PETERS, C. J., HEALEY, PARSKEY, SHEA and SANTANIELLO, Js.

Argued October 5, 1984—decision released January 1, 1985

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Justin Sullivan,* law student intern, with whom was *Donald B. Caldwell,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. After a jury trial, the defendant, Stanley Williams, was convicted of possession of a weapon inside a state correctional institution in violation of General Statutes § 53a-174a.[1] This conviction stemmed from an incident in the Connecticut Correctional Institution at Somers. A correctional officer, while searching the defendant following a disturbance, found a shank (a steel rod sharpened to a point attached to a wooden handle) concealed under the defendant's left pant leg stuck into his sock. On appeal, the defendant presses two claims of error: First, he claims that

---

[1] General Statutes § 53a-174a, entitled "Possession of weapon or dangerous instrument in correctional institution: Class B felony," provides: "(a) A person is guilty of possession of a weapon or dangerous instrument in a correctional institution when, being an inmate of such institution, he knowingly makes, conveys from place to place or has in his possession or under his control any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable.

"(b) Possession of a weapon or dangerous instrument in a correctional institution is a class B felony."

his right to a fair and impartial trial was denied as a result of the court's refusal to remove shackles from his legs before jury selection commenced; and second, the defendant contends that the trial court erred in refusing to strike from the record remarks made in closing argument by the state's attorney concerning the defendant's failure to call certain inmates to testify. We find no error.

## I

We first examine the defendant's claim that the trial court erred in refusing to order the removal of restraints from his legs prior to the selection of jurors. In essence, the defendant contends that the trial court abused its discretion by ruling, both before and during the jury selection proceedings, that the defendant would remain in leg shackles, thereby denying his right to a fair and impartial trial. We disagree.

Our review of the record discloses that the following occurred: On July 21, 1982, the day jury selection began, the defendant, who was an inmate at the Connecticut Correctional Institution at Somers, was brought into the courtroom with his legs restrained by shackles. The defendant's trial counsel requested the court to remove the restraints prior to the entrance of the jury panel into the courtroom. The defense counsel asserted that he did not perceive "any escape risk" if the defendant were unshackled. The court noted that the defendant would enter the courtroom prior to the jury panel. Also, the trial court inquired about the need for restraints from the two correctional officers who had transported him from the prison in Somers to the courthouse. One officer indicated that he knew nothing of the defendant's past record, that he had never met him prior to that day and that he "couldn't honestly say" anything about leg irons in the courtroom. The

other officer simply said: "I have no idea."[2] The trial court then observed that the jurors would not see the restraints because "the Court has gone to some expense and effort in order to prevent the jurors from noticing that [restraint] with a specially constructed panel under that table" where the defendant and his counsel would be seated in the courtroom. Thereafter, the trial court, in response to the defense counsel's statement that the defendant would be testifying at trial, offered assurances that the jurors would then be excused so that the restraints could be removed out of their presence, and the defendant would be unrestrained physically while on the stand. Assessing the situation, the trial court, at that point, denied the defendant's request to remove the restraints. At the defendant's request, the trial court allowed prospective jurors to enter only the forward end of the jury box in order to minimize any likelihood that jurors would observe the restraints. After the voir dire had been underway for almost two hours, the defendant refused to participate further in the proceedings and, out of the presence of the jury panel, voluntarily absented himself from the courtroom when the trial court denied his renewed request to have the restraints removed.[3] Shortly after the defendant left the courtroom, one of the two correctional officers informed the court that: "He [the defendant] made a statement downstairs [that] he is not coming back to

[2] In light of the fact that the two correctional officers offered no opinion upon the court's inquiry, we are hard pressed to consider seriously the defendant's suggestion that the trial court abdicated its responsibility for determining the need for restraints. We do agree with the defendant, however, that ultimate responsibility for any decision regarding the need for in-courtroom restraints rests with the trial court. See Practice Book § 892.

[3] In denying this request, the trial court analyzed the situation as follows: "You stated your objection, and the Court must balance the risk of possible prejudice against the hazard involved in the risk of escape. In view of the questions I have asked of the guards and those in charge of his custody, there is some doubt in my mind as to whether or not it would be prudent to allow him to be unshackled. We have done our best to keep that hidden from the jury, and I would, therefore, deny the motion."

court tomorrow unless we have to fight to bring him back." The defendant thus was not present in the courtroom for about the last forty minutes of the July 21 voir dire, informing the court that the reasons for his absence were the leg restraints and sorrow over his brother's recent death.

The next day, the defendant appeared in court for the remainder of the jury selection. The trial court again denied the defendant's request to remove his restraints, this time for two additional reasons: First, the defendant appeared to the court to be "doing his utmost to avoid having a trial"; and second, the sheriff in charge of courtroom security had stated that the defendant presented a risk, and therefore preferred that his legs remain shackled. Later that day and prior to the start of evidence, the trial court ordered removal of the restraints in recognition of the defendant's improved in-court demeanor and conduct during the latter part of jury selection. The defendant was tried before the jury, therefore, free of any physical restraints whatsoever. We note also that the defendant, having signed a written waiver when offered civilian clothes for his court appearance, chose to appear in court wearing his khaki prison uniform.[4]

As a general proposition, a criminal defendant has the right to appear in court free from physical restraints. *Woodards* v. *Cardwell,* 430 F.2d 978, 982 (6th Cir. 1970), cert. denied, 401 U.S. 911, 91 S. Ct. 874, 27 L. Ed. 2d 809 (1971); *Corey* v. *State,* 126 Conn. 41, 42, 9 A.2d 283 (1939); *People* v. *Duran,* 16 Cal. 3d 282, 288-89, 290-91, 545 P.2d 1322, 127 Cal. Rptr. 618 (1976); *Commonwealth* v. *Brown,* 364 Mass. 471, 475, 305 N.E.2d 830 (1973); *Rush* v. *State,* 301 So. 2d 297, 300 (Miss. 1974); *State* v. *Tolley,* 290 N.C. 349, 365-66,

---

[4] The record indicates that just before trial the defendant raised a claim that his waiver was made without his full awareness of just what he was waiving. That claim has not been raised on appeal.

226 S.E.2d 353 (1976); *Commonwealth* v. *Davis,* 466 Pa. 102, 116, 351 A.2d 642 (1976); see also *Illinois* v. *Allen,* 397 U.S. 337, 344, 90 S. Ct. 1057, 25 L. Ed. 2d 353, reh. denied, 398 U.S. 915, 90 S. Ct. 1684, 26 L. Ed. 2d 80 (1970). Grounded in the common law,[5] this right evolved in order to preserve the presumption favoring a criminal defendant's innocence, while eliminating any detrimental effects to the defendant that could result if he were physically restrained in the courtroom. *Kennedy* v. *Cardwell,* 487 F.2d 101, 105–106 (6th Cir. 1973), cert. denied, 416 U.S. 959, 94 S. Ct. 1976, 40 L. Ed. 2d 310 (1974); *Clark* v. *State,* 280 Ala. 493, 496, 195 So. 2d 786, appeal dismissed, 387 U.S. 571, 87 S. Ct. 2071, 18 L. Ed. 2d 967 (1967); *Commonwealth* v. *Brown,* supra, 475; see also annot., 90 A.L.R.3d 17, 33–36 (1979).

We nevertheless recognize that the trial judge "has a duty to do what may be necessary to prevent escape, to minimize danger of harm to those attending trial as well as to the general public, and to maintain decent order in the court room." *Commonwealth* v. *Brown,* supra, 475. We have said that reasonable physical restraints may not violate the rights of the criminal defendant "if there is a reasonable ground to anticipate that otherwise he may do violence or escape."

---

[5] The rules governing the use of physical restraints upon criminal defendants originated under English common law. Sir William Blackstone wrote that "[t]hough under an indictment of the highest nature, [the prisoner] must be brought to the bar without irons, or any manner of shackles or bonds; unless there be evidence of danger of an escape, and then he may be secured with irons." 4 Blackstone, Commentaries p. 322; see also 2 Hale, Pleas of the Crown (1778) p. 219. But Hale cautioned that "at this day they usually come with their shackles upon their legs, for fear of an escape, but stand at the bar unbound, till they receive judgment." 2 Hale, supra. In *Rex* v. *Waite,* 1 Leach's Crown Law 28, 36 (1743), it was stated that the court had no authority to order that the irons be removed until the prisoner has pleaded and the jury was charged to try him. 4 Blackstone, supra, p. 322 n.2; see generally Krauskopf, "Physical Restraint of the Defendant in the Courtroom," 15 St. Louis U.L.J. 351, 352–53 (1971).

*Corey* v. *State,* supra, 42–43. When a "reasonable necessity" exists, the trial court may employ reasonable means of restraint upon a criminal defendant. Id.; Practice Book § 892;[6] see *Illinois* v. *Allen,* supra, 350 (Brennan, J., concurring) (the federal constitution neither requires nor prohibits the use of restraints upon "a defendant bent on disrupting his trial"). Indeed, the use of physical restraints has been upheld to maintain courtroom security, even in the absence of disruptive conduct, when the trial court deemed it necessary to do so. See, e.g., *Loux* v. *United States,* 389 F.2d 911, 919–20 (9th Cir.), cert. denied, 393 U.S. 867, 89 S. Ct. 151, 21 L. Ed. 2d 135 (1968). The use of shackles does, in a given case, protect an important state interest such as safety in the courtroom. *Williams* v. *Estelle,* 500 F.2d 206, 209 (5th Cir. 1974), rev'd on other grounds, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126, reh. denied, 426 U.S. 954, 96 S. Ct. 3182, 49 L. Ed. 2d 1194 (1976); see *State* v. *Gilbert,* 121 N.H. 305, 310, 429 A.2d 323 (1981). The trial court thus is charged with maintaining the proper balance of the rights of a criminal defendant to appear in court free of restraint with the need in certain instances for precautionary security measures. When either ordering the use of restraints or refusing to remove them, the trial court must ensure that the reason for their employment is detailed in the record. Practice Book § 892; *Kennedy* v. *Cardwell,* supra, 107; *People* v. *Duran,* supra, 291; *Common-*

---

[6] Practice Book § 892 provides: "Upon the direction of the judicial authority, a defendant may be removed from the courtroom during his trial when his conduct has become so disruptive that the trial cannot proceed in an orderly manner. Reasonable means of restraint may be employed if the judicial authority finds such restraint reasonably necessary to maintain order. If the judicial authority orders such restraint, he shall enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant occurs in the presence of jurors trying the case, or whenever the defendant is removed, the judicial authority shall instruct the jurors that such restraint or removal is not to be considered in assessing the evidence or in determining guilt or innocence."

*wealth* v. *Brown,* supra, 479; *Flowers* v. *State,* 43 Wis. 2d 352, 363, 168 N.W.2d 843 (1969). An adequate record demonstrating the necessity for the use of the restraints imposed is essential to meaningful appellate review of claims such as are made here. In this case, we find the record adequate for review.

The standard under which we review this claim made by the defendant is whether the trial court abused its sound discretion in refusing to order the restraints removed during the selection of the jury. "[S]ound discretion has long meant a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. . . . And this requires a knowledge and understanding of the material circumstances surrounding the matter calling for the exercise of sound discretion." (Citation omitted.) *Woodards* v. *Cardwell,* supra, 982. Because of the potential for prejudice in the use of shackles, the record should disclose the justification for their use, but the trial court's discretion in deciding such an issue is broad. In speaking to the trial court's wide discretion, one court said: "It is [the trial judge] who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes." *United States* v. *Samuel,* 431 F.2d 610, 615 (4th Cir. 1970), cert. denied, 401 U.S. 946, 91 S. Ct. 964, 28 L. Ed. 2d 229 (1971); see also *State* v. *Kile,* 313 N.W.2d 558, 562 (Iowa 1981). Our review of the record shows that the trial court, in balancing the various interests concerned here, attempted to do "what is right and equitable under the circumstances and the law." The nature and the duration of physical restraint of the defendant in this case did not constitute, under the circumstances, an abuse of the trial court's discretion.

The defendant was charged with possession of a weapon in a correctional institution. General Statutes § 53a-174a. The trial court had to be cognizant immediately that the defendant, while already serving a prison sentence, was charged with a crime of potential violence. Inquiries made by the trial court of the attorneys, the correctional officers and the sheriff, as to the necessity for the restraints, underscore the court's attempt to accommodate fairly the interests of the defendant, the court, and the state; and inquiry by the court of officials charged with the custody of a prisoner as to what security measures might be necessary in a given case is proper. *United States* v. *Samuel,* supra, 615; *Commonwealth* v. *Brown,* supra, 474; *Commonwealth* v. *DeVasto,* 7 Mass. App. Ct. 363, 365–66, 387 N.E.2d 1169 (1979); *State* v. *Tolley,* supra; *State* v. *Roberts,* 86 N.J. Super. 159, 166–67, 206 A.2d 200 (1965). The defendant's in-court conduct lends support to the trial court's assessment that the restraints not be removed during the jury selection proceedings. The defendant, having voluntarily absented himself from the courtroom during those proceedings, refused to respond to a question from the court.

Although no formal hearing was conducted on the need for restraints, the trial court nevertheless reasonably exercised its discretion in restraining the defendant, particularly in view of the precautionary measures taken by the trial court to prevent any potential jurors from seeing the restraints. See *Harrell* v. *Israel,* 672 F.2d 632, 636–37 (7th Cir. 1982). A vanity panel was erected at the table where the defendant and his attorney sat, and the jurors entered the courtroom through the front end of the jury box to minimize any likelihood of perceiving the leg restraints. The duration of time that the defendant remained shackled in the courtroom was minimal; he was in restraints only during the jury selection proceedings, during which he chose, for a brief

period, to be absent from the courtroom. Moreover, the leg restraints had been removed prior to the start of trial due to the noticed improvement in the defendant's courtroom demeanor. At trial, the defendant testified free of any restraints. Finally, the record does not indicate nor does the defendant claim that any offer of proof was made as to whether the jurors could or did view the restraints when on the defendant. See *State v. Scott,* 323 N.W.2d 790, 792 (Minn. 1982); *State v. Hudson,* 281 N.W.2d 870, 874 (Minn. 1979); *Commonwealth v. Davis,* supra, 116. On the basis of the foregoing, the trial court could have found that the use of leg restraints was reasonably necessary; see Practice Book § 892; and the measures taken in this case minimized the potential for prejudice to the defendant therefrom.[7] The balance struck by the trial court in exercising its discretion, therefore, was proper and did not impermissibly impinge upon the rights of the defendant.

---

[7] As we are unpersuaded that the trial court abused its discretion by permitting leg restraints on the defendant, we need not discuss whether the defendant was harmed by the court's refusal to order them removed during the voir dire of the jury panel. We note in passing, however, that the jury was aware that this defendant was an inmate at a correctional institution. His inmate status was an essential element of the crime charged, possession of a weapon in a correctional institution. This is not to say that physical restraints may be imposed upon an accused in a courtroom simply because he is already serving a sentence. See *United States v. Samuel,* 431 F.2d 610, 615 (4th Cir. 1970), cert. denied, 401 U.S. 946, 91 S. Ct. 964, 28 L. Ed. 2d 229 (1971); *People v. Duran,* 16 Cal. 3d 282, 293, 545 P.2d 1322, 127 Cal. Rptr. 618 (1976). Given the nature of Somers as a maximum security correctional institution and the fact that this defendant was on trial for a charge which involved a weapon, which itself was an exhibit, it is not unreasonable to assume that the jury would naturally expect that, when a defendant inmate appeared in court, adequate security measures would be taken, with each case standing on its own circumstances. *Harrell v. Israel,* 672 F.2d 632, 638 (7th Cir. 1982). Moreover, the defendant, having waived the offer for civilian clothes, appeared in the courtroom wearing his prison uniform. It was no secret, thus, that the defendant on trial was already imprisoned on another conviction. *Commonwealth v. Brown,* 364 Mass. 471, 476-77, 305 N.E.2d 830 (1973); *State v. Gilbert,* 121 N.H. 305, 310, 429 A.2d 323 (1981); *State v. Mills,* 94 N.M. 17, 21, 606 P.2d 1111 (1980).

## II

The defendant next claims that the trial court erred in allowing the state to argue in summation that the jury might draw an unfavorable inference from the defendant's failure to call at trial as witnesses certain inmates who allegedly observed the incident in question. The defendant argues that the state was not entitled to this unfavorable inference because it neither had requested advance permission from the trial court nor could have satisfied the established requirements for such a permissible adverse inference. The state responds, inter alia, that it did not point out such an inference to the jury or request an instruction thereon from the court; that the comment had merely repeated what the defense counsel had stated in the jury's presence the previous day; and that any error in the trial court's ruling was remedied by the general instructions to the jury.

An analysis of this claim requires a general review of the evidence presented and the context in which the contested remarks were made. The state's case-in-chief consisted of only one witness. This was Thomas Golemba, a correctional officer who testified that on the day of the incident he was directed to proceed to the prison upholstery shop where the defendant was assigned to work. A supervisor in that area instructed Golemba to escort the defendant to the captain's office. At least twenty-five other inmates were in the upholstery shop at the time the defendant was escorted therefrom. Outside of the upholstery shop, Golemba, pursuant to usual procedure, then conducted a pat-down search of the defendant. Under the defendant's left pant leg stuck into his sock, this officer discovered a "home-made" knife, commonly referred to as a "shank," which he removed from the defendant's person.

At trial, the defendant sought to show that the weapon was not found on his person and that it was the property of another inmate who had attacked the defendant in the upholstery shop. Specifically, the defendant attempted to persuade the jury that the search occurred inside, rather than outside, the upholstery shop and that no shank was found on his person. The defendant called as witnesses other correctional department personnel in his attempt to support these contentions. Thereafter, the court asked defense counsel to call his next witness. At that time, defense counsel stated in the presence of the jury that the defendant would probably be testifying tomorrow and that "[a]t this time, I have two other witnesses that we will conclude with in the morning. They aren't here, because we haven't a written [writ of] habeas corpus. I would assume the total testimony of the two other witnesses and the defendant won't consume more than an hour." To an inquiry for clarification by the court as to whether any other witnesses would be called at that particular session, the defense counsel reiterated: "Yes. I have two other[s]—." Both references to two other witnesses were made to the court in the presence of the jury. Shortly thereafter, outside of the jury's presence, the defense counsel informed the court and the state of the identities of these two witnesses, inmates who were "both present, apparently, in the upholstery shop at the time."[8] The next day at trial, the defendant did testify on his own behalf, yet he called but one of those two inmates to testify.

During closing argument to the jury later that day, the state's attorney remarked: "Yesterday before we

---

[8] In addition, defense counsel gave the name of another inmate for whom the court said it had already signed a habeas corpus writ (testificiandum) and who was present in the courtroom. Defense counsel stated that he had already spoken to this inmate who told him that if called to the witness stand, the inmate would refuse to testify; therefore, defense counsel would not call him as a witness.

left [defense counsel] Mr. Giedraitis said he was bringing down two other inmates." The defendant immediately moved to strike, a request that the trial court denied summarily.[9] In objecting to this "improper comment," defense counsel said, inter alia, "I object to his commenting on the fact that *one* of the witnesses which I listed did not testify." (Emphasis added.)

Later, in its instruction to the jury, the trial court discussed, inter alia, the credibility of witnesses: "Now, the credibility of witnesses and the weight to be given to their testimony are matters which are especially within your province to determine. *No fact is to be determined merely by the number of witnesses testifying for or against it. It is the quality, not the quantity, of testimony that controls.* There is no such thing as legal equality of credibility of witnesses. The testimony of each is to be weighed for what it seems to you to be worth in the light of its character, the demeanor of the witness as it bears on credibility, the substance of the testimony, and the probability or improbability that what the witness says is true. So, each witness must first stand or fall upon his own testimony. He may be unimpeached and uncontradicted and his testimony may not even be adversely affected by other evidence, yet, his testimony need not necessarily be believed; nor

---

[9] In denying the request, the trial court, in the jury's presence, commented: "I am not going to order it stricken from the record, no. That is not what I understand Mr. Caldwell to have said in his argument. I understood him to say there was a certain number of people in the upholstery shop, inmates, I believe, and the question is, why weren't some of these people here to state their version. Then he pointed out that some inmates had been sought to testify by habeas corpus and they didn't testify. I don't think that's anything that should be stricken from his oral argument."

While the defendant argues on appeal that these comments not only gave approval to the prosecutor's remark but also exacerbated the impermissible inference, no specific objection was made to the trial court's remarks. This claim was not properly preserved and we decline the defendant's invitation to consider it under *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973). Practice Book § 3063 (as amended).

does testimony have to be rejected when it is in conflict with that of other witnesses, if that is your judgment. Absence of direct contradiction by oral testimony of a witness does not make a fact undisputed. You are at liberty to discredit any witness or multitude of witnesses, if you deem you have cause to do so. So, one of your important functions is to determine the relative credit to be given oral evidence." (Emphasis added.)

Since *State* v. *Daniels,* 180 Conn. 101, 113, 429 A.2d 813 (1980), any party intending to argue to the jury that an unfavorable inference be drawn from the absence of a particular witness must seek advance permission from the trial court. *State* v. *Ubaldi,* 190 Conn. 559, 567 n.6, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). In the present case, the state did not request the court's permission to argue for the alleged inference. We disagree with the state's suggestion that the prosecutor's statement during summation regarding the "two other inmates" raised no such inference. Reason and experience might suggest that the state's attorney was attempting to persuade the jury to draw the inference that any testimony by the missing witness would have been unfavorable to the defendant. The fact that the state neither requested nor expressly pointed out to the jury the inference eludes the purpose of the requirement for seeking an advance ruling: To enable the trial court to evaluate fairly whether a party is entitled to such an inference under the test established in *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960), which we have held equally applicable to criminal cases. *State* v. *Annunziato,* 169 Conn. 517, 538, 363 A.2d 1011 (1975). In the present case, the failure of the trial court to strike the remark by the state does not constitute reversible error for two interrelated reasons.

First, we agree with the state that its closing remark was not uninvited by the defendant because of the defense counsel's statements in the presence of the jury the day before. The state's attorney's comment merely had repeated the substance of the defense counsel's statements spoken the previous day in the presence of the jury. The jury thus was not provided any information that had not been already placed before it by the defendant.[10] See *State* v. *Kinsey,* 173 Conn. 344, 349, 377 A.2d 1095 (1977).

Second, the trial court correctly eradicated the possible drawing of such an unfavorable inference through its jury instructions. The trial court made plain that the jurors were not to determine any facts based solely upon the number of witnesses testifying thereto: "It is the quality, not the quantity, of testimony that controls." By charging the jury to disregard the number of witnesses, the trial court barred the jurors from deliberating about anyone who did not testify before them. Under all the circumstances, the instructions to the jury in this case, coupled with the defense counsel's statements of the day preceding, lead us to conclude that no reversible error arose from the trial court's refusal to strike the prosecutor's comment.[11] *State* v. *Falcone,* 191 Conn. 12, 24–25, 463 A.2d 558

---

[10] The prosecutor's remarks thus in no way rise to the level of inappropriateness as those recently considered by this court. See *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984); *State* v. *Ubaldi,* 190 Conn. 559, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); cf. *State* v. *Fullwood,* 194 Conn. 573, 484 A.2d 435 (1984). The defendant specifically challenges only the court's failure to strike the remark. No allegation has been made of any prosecutorial misconduct.

[11] Because we find no error due to both the prior comment by the defendant and the effect of the jury instructions, we need not decide the issue of whether an unfavorable inference would have been proper under the circumstances. Any discussion thereof, then, "would be academic as far as the decision of this case is concerned, and it is the established policy of this court not to decide issues of that nature." *Anastasio* v. *Gulf Oil Corporation,* 131 Conn. 708, 719, 42 A.2d 149 (1945).

(1983) (charge to the jury cured any prejudice resulting from prosecutor's improper comment during closing argument concerning defendant's earlier objection).

There is no error.

In this opinion PETERS, C. J., PARSKEY and SANTANIELLO, Js., concurred.

SHEA, J., concurring. I disagree with the portion of the majority opinion that holds the trial court to have exercised its discretion reasonably in restraining the defendant. The opinion appears to recognize that the record must demonstrate the necessity for the use of shackles upon a defendant during trial in order to supersede his common law "right to appear in court free from physical restraints." On the first day of jury selection when the court denied the defendant's request for removal of his leg irons the record indicates merely that the two correctional officers had no opinion about the need for restraints upon the defendant. It was not until two hours later, after a second request to be unbound was denied, that the defendant showed some lack of cooperation by electing to absent himself from the courtroom because of the court's groundless refusal to respect his right to appear in court without restraints. I would find error in the denial of these two requests of the defendant for removal of his shackles since the record is devoid of any basis to support the action of the trial court. Evidence of subsequent irascibility on the part of the defendant, apparently precipitated by these erroneous rulings, can hardly be relied upon to justify them. In view of the elaborate precautions adopted by the trial court, however, to conceal from the jury the fact that the defendant was being held in irons during the early portion of his trial, I would find this error to be harmless, as it could not conceivably have affected the outcome.

I also disagree with the portion of the opinion that relies upon the boiler-plate instruction that "the quality, not the quantity, of testimony . . . controls" in determining that "the trial court correctly eradicated the possible drawing of . . . an unfavorable inference" from the remark of the state's attorney during argument about the failure of the defendant to produce one of his witnesses. If such a commonplace instruction could remove the prejudice emanating from an improper recital of the principle allowing an unfavorable inference to be drawn from failure to produce a witness; *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960); it would be a rare case where the erroneous invocation of that principle could result in a reversal. Although problems involving *Secondino* have been frequently presented to this court, the intimation of the majority opinion that erroneous applications of the principle may be cured by the standard bromide about quality vis-a-vis quantity of testimony is unprecedented. See, e.g., *State* v. *Daniels,* 180 Conn. 101, 109–14, 429 A.2d 813 (1980); *State* v. *Kinsey,* 173 Conn. 344, 351, 377 A.2d 1095 (1977); *Doran* v. *Wolk,* 170 Conn. 226, 229–31, 365 A.2d 1190 (1976); *Queen* v. *Gagliola,* 162 Conn. 164, 168–69, 292 A.2d 890 (1972).

I would find that the prosecutor's brief reference to another witness the defendant intended to bring to the trial was harmless because the jury had already been informed of this witness by defense counsel. Whether or not the state's attorney would have gone farther and argued the *Secondino* principle if he had not been interrupted by the defendant's objection, the only remark the jury heard merely repeated what had already been learned from the defendant and was, therefore, not prejudicial.

Accordingly, I agree with the result.