[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE COMPULSORY TESTING
On September 12, 1991, Judge Quinn ordered the defendant to submit to the taking of blood, saliva, and hair samples pursuant to 775 et seq. of the Practice Book. On that date and subsequently the defendant indicated he would not submit to the taking of this evidence. The State now has moved that the court order that the defendant be required by the use of reasonable force to submit to the testing. CT Page 1834
No constitutional objections have been raised by the defendant to this request. Schmerber v. California, 384 S.S. 757 (1966) rejected due process, Fifth and Fourth amendment arguments to the compelled taking of a blood sample from a defendant. Schmerber was a non-warrant case; surely a search warrant could be resorted to by the police to procure blood, saliva, and hair samples. The language of 54-33a is broad enough to pose no statutory bar to the procurement of such a warrant. It is also, of course, true that the police could use reasonable force to execute such a warrant.
Granted the above reasoning there can be no constitutional objection to the court's ordering the use of reasonable force to make the defendant submit to testing. This is so because 776 of the Practice Book requires the court to find probable cause that the non-testimonial evidence requested is material and cannot be gotten from another source. The request is made at an open court hearing at which the defendant appears with counsel. But as noted, the defendant hasn't questioned the constitutionality of the State's request at least on Fourth amendment or Fifth amendment grounds.
The objections that the defendant does raise are confined to two points:
 (1) Exercise of reasonable force to procure the non-testimonial evidence from the defendant would be an affront to his dignity.
 (2) Sections 775 et seq. of the Practice Book are based on the Uniform Rules of Criminal Procedure and the A.L.I. Model Code of Pre Arraignment Procedure. They have language very similar to that in our rules and their commentaries specifically provide that contempt is the only tool available to the court against a person who refuses to obey a court order regarding the procurement of non-testimonial evidence.
As to the first objection — affront to the defendant's dignity, the use of that language in this context misses the point. When the commentators and case law talk about concern over the dignity of the individual in ordering the procurement of non-testimonial evidence, they are concerned with the type of test employed and whether that test affronts the defendant's dignity by the very nature of the test. cf Rochin v. California, 342 U.S. 165
(1952) (stomach pumping). CT Page 1835
Here what the defendant would characterize as an affront to his dignity — to wit: the reasonable use of force to carry out the testing — is triggered only by his unlawful defiance of a valid court order not by any legally cognizable complaint against the safe and mundane testing procedures ordered by the court after a full hearing.
Cf. Shackling cases. State v. Williams, 195 Conn. 1; State v. Woolcock 201 Conn. 605.
(2)
Turning to the second objection. Nothing in the language of 775-779 specifically bars the court from ordering reasonable force to effect the testing procedure. All 779 says is that notice to the defendant shall include language that the defendant — "may be held in contempt of court if he (or she) fails to appear and participate in the procedure . . ." which is directed by the court. Notice requirement to a defendant is necessary if the contempt sanction is to be available, period! — that's all that can be gleaned from a literal reading of 779 Practice Book.
The defendant argues that 779 is based on the previously mentioned model codes and thus must be interpreted in light of the commentary to those codes. In fact both sides filed repeated briefs waging a rather interesting contest over the true meaning of various commentaries and their applicability or lack thereof to our Practice Book. Suffice it to say that no where did the rules committee in enacting 775 through 779 of the Practice Book indicate that it was adopting the commentary of any model code.
It is true that the ALI section analagous to 779 Practice Book provides that a person not obeying a court order regarding testing or participation in certain procedures will be subject to the contempt powers of the court. As noted the commentary to this ALI section indicates contempt is the only tool the court can use if the order is not obeyed. But one of the key determinants of the appropriate enforcement mechanism for violation of such court orders should be the category of individuals against whom the order of the court may lie. The ALI rules provide that its provisions can be used to secure orders for testing and participation in indicated procedures not only against people already arrested but also against mere suspects. As a matter of policy the courts should be wary of ordering 775 Practice Book type procedures at a prearrest stage and enforcing those orders, where necessary, by compulsion against those merely suspected of crime. This is especially so since the police can secure the same result by procurement of a search warrant. We have an adversarial not an inquisitorial system and the courts should be reluctant to order compulsory procedures that assist the police on purely CT Page 1836 investigative matters prior to arrest.
Sections 775 et seq. of the Practice Book apply only to arrested individuals. An important reason why this court believes in the appropriateness of the use of reasonable force to procure nontestimonial evidence where the contempt power is ineffective follows from the post-arrest status of the defendant.
If the court were to adopt a policy of not ordering the reasonable use of force under any circumstances to carry out testing procedures, the State would be encouraged to resort to search warrants to achieve the same end after the commencement of a criminal case. Defendants who already have lawyers would be brought in contact with police forces in an unsupervised setting outside the protections which the hearing procedure under 775 et seq. was meant to procure.
In any event, the model codes relied upon by the defendant do not contain any provision analagous to 6 of our Practice Book, which states:
 "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice."
 (See State v. Anonymous, 32 Conn. Sup. 306, 312
(1976) where the court relied on the predecessor section to Rule 6 in the 1963 Practice Book to order a physical examination of — the defendant which was not provided for in the rules.)
There are several reasons why a fair and common sense reading of the Practice Book provisions providing for the procurement of non-testimonial evidence dictate a finding that this court should have the power to order compulsory testing where the contempt power is ineffective.
If the contempt power is the only tool the court has to enforce its order the purported power of the court to issue such orders is meaningless against defendants already serving lengthy periods of incarceration on matters not before the court.
This is peculiarly unfair to the State in light of the reciprocal rights given to defendants under 782 of the Practice Book to demand an order for the procurement of non-testimonial evidence. If the court made such an order in the defendant's behalf and the State refuses to cooperate, the court might, after using the contempt power, give funding to the defendant to do the CT Page 1837 testing or even dismiss the charges. The only way to enforce the intended reciprocal scheme of the Practice Book rules is to allow the court to order the reasonable use of force against a defendant who, despite being held in contempt, refused to comply with testing procedures.
Furthermore this court has great difficulty in appreciating the force of an argument that on the one hand says that if a defendant fails to obey a 779 Practice Book order and is held in contempt he or she can be thrown in jail and subject to all the indignities and daily compulsions of that existence but then laments as an affront to dignity the use of reasonable force to effectuate a simple test lasting a few seconds. Reasonable force, it must be added, necessitated by the defendant's willful violation of a court order.
An absolute bar to compulsory testing whenever the defendant refuses to obey such a court order would also render 777 of the Practice Book ludicrous on its face. That section sets up emergency procedures when "an affidavit or testimony shows that there is probable cause to believe that the evidence sought will, be altered, dissipated or lost if not promptly obtained." The contempt power would be of limited use in such a situation and restriction of the court to the use of that power in such an emergency situation would render 777 Practice Book veritably meaningless.
This court has extended the defendant every courtesy, the orders were entered in this case months ago. The court need not adopt the State's sweeping assertions of this court's common law power to rule in its favor. But the court does believe that a common sense interpretation of 775 through 779 of the Practice Book, especially in light of 6, requires that the State's motion for compulsory testing be granted.
THOMAS CORRADINO, JUDGE
CT Page 1837