******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL BRAWLEY
(SC 19441)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued December 15, 2015—officially released June 14, 2016*

*Christopher N. Parlato*, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Jason Germain*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The sole issue raised by this certified appeal is whether the Appellate Court properly concluded that the defendant, Michael Brawley, is not entitled to a new trial even though the record provides no support for the ruling of the trial court requiring that the defendant remain shackled during his criminal trial. Although we agree with the defendant that he should not have been shackled throughout the trial, he has failed to establish that he was harmed by the shackling because, so far as the record reveals, the jury never saw the restraints. Accordingly, we affirm the judgment of the Appellate Court.

For purposes of this appeal, only a brief summary of the relevant facts and procedural history is necessary. In July, 2008, the defendant was apprehended for his alleged role in a series of burglaries in the town of Naugatuck, the purpose of which was to obtain money and an M-4 machine gun. Thereafter, the defendant was charged with multiple counts of burglary in the first degree and conspiracy to commit burglary in the first degree, and one count each of kidnapping in the first degree, conspiracy to commit kidnapping in the first degree, assault in the second degree, carrying a pistol without a permit, and criminal possession of a firearm.

On September 24, 2009, the defendant entered a plea of not guilty as to all counts and elected to be tried by a jury except on the charge of criminal possession of a firearm, for which he elected a court trial. At the start of the first day of the evidentiary portion of the trial, defense counsel moved to have the defendant's shackles "removed predicated on good behavior." The trial court denied the motion, stating that "the standard procedure is to leave shackles on during trial." The trial court further explained that its standard procedure is to remove the shackles "only during . . . jury selection when a juror is in the back row . . . ." The trial court made no additional statements or findings regarding the shackling, and the issue did not arise again at any point during the defendant's trial. Following a six day trial, the jury found the defendant guilty on all of the counts that had been tried to the jury, and the trial court found the defendant guilty of criminal possession of a firearm. The trial court rendered judgment in accordance with the jury's verdict and the court's finding, and sentenced the defendant to a total effective term of thirty years imprisonment.

The defendant appealed from the judgment of the trial court to the Appellate Court, which affirmed the trial court's judgment in a memorandum decision. *State* v. *Brawley*, 153 Conn. App. 903, 100 A.3d 62 (2014). Thereafter, we granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's

determination that the defendant would be required to remain shackled throughout the guilt phase of the trial?" *State* v. *Brawley*, 315 Conn. 917, 107 A.3d 412 (2015).

Following oral argument before this court, and in accordance with Practice Book § 60-2,[1] we directed the trial court to "inform this court whether the jury . . . was able to observe, or otherwise was aware, that the defendant was wearing shackles during trial." We further directed the trial court to "state (1) the basis of its knowledge in that regard, and (2) the kind or type of shackles at issue, that is, leg irons, belly chain or the like." In its response to our order, the trial court first explained that, because "the trial in question took place [more than] six years ago," it could not "state with certainty from its recollection what type of shackles the defendant wore or whether the shackles worn by the defendant were visible to the jury." The court also stated, however, that "it [was] the court's strong belief that the defendant wore leg shackles only and that they were not visible to the jury." In support of this belief, the court observed that, "over its eighteen years of experience, it [could not] . . . recall presiding over any jury trial in which a party has worn a belly chain or the like." With regard to whether the jury witnessed the defendant in shackles, the trial court further explained that, as a general matter, "it believes firmly in taking every measure to prevent the jury from doing so," and, to that end, the court's standard procedure is to ensure that a defendant's shackles are concealed by having a curtain placed around the defense table so that the jury cannot see the defendant's legs, and by having the defendant seated at the table whenever the jury enters or exits the courtroom. Finally, the trial court stated that its review of the jury charge revealed "that the court made no mention of shackles, which the court would normally have mentioned if the jury had seen the defendant's shackles, either inadvertently or as a result of the court's orders." Accordingly, the trial court concluded that there was "every reason to believe that the court prevented the jury from seeing the defendant in shackles and no evidence to support the contrary belief."

On appeal to this court, the defendant claims, contrary to the conclusion of the Appellate Court, that, because the trial court failed to find that the use of restraints on the defendant during trial was reasonably necessary, its decision compelling him to remain shackled violated his constitutional right to a fair trial. Although conceding that the trial court did not provide any legitimate reason for the shackling, the state argues that the impropriety was harmless because the record is devoid of any evidence that the jury saw or otherwise knew that the defendant was shackled. We agree with the state.

We begin our review of the defendant's claim by

setting forth the legal principles that govern our analysis. It is well established that, "[a]s a general proposition, a criminal defendant has the right to appear in court free from physical restraints. . . . Grounded in the common law, this right evolved in order to preserve the presumption favoring a criminal defendant's innocence, while eliminating any detrimental effects to the defendant that could result if he were physically restrained in the courtroom. . . . The presumption of innocence, although not articulated in the [c]onstitution, is a basic component of a fair trial under our system of criminal justice. . . . Nonetheless, a defendant's right to appear before the jury unfettered is not absolute. . . . A trial court may employ a reasonable means of restraint [on] a defendant if, exercising its broad discretion in such matters, the court finds that restraints are reasonably necessary under the circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 454–55, 680 A.2d 147 (1996). Despite the breadth of that discretion, however, "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a [s]tate to shackle a criminal defendant only in the presence of a special need." *Deck* v. *Missouri*, 544 U.S. 622, 626, 125 S. Ct. 2007, 161 L. Ed. 2d 953 (2005); see also *United States* v. *Haynes*, 729 F.3d 178, 188 (2d Cir. 2013) ("a defendant may not be tried in shackles unless the trial judge finds on the record that it is necessary to use such a restraint as a last resort to satisfy a compelling interest").

"In order for a criminal defendant to enjoy the maximum benefit of the presumption of innocence, our courts should make every reasonable effort to present the defendant before the jury in a manner that does not suggest, expressly or impliedly, that he or she is a dangerous character whose guilt is a foregone conclusion. . . . The negative connotations of restraints, nevertheless, are without significance unless the fact of the restraints comes to the attention of the jury." (Internal quotation marks omitted.) *State* v. *Webb*, supra, 238 Conn. 455. "The defendant bears the burden of showing that he has suffered prejudice by establishing a factual record demonstrating that the members of the jury knew of the restraints." Id.; see also *State* v. *Tweedy*, 219 Conn. 489, 507 n.14, 594 A.2d 906 (1991) ("[a]lthough defense counsel claimed at trial that the defendant's restraints were visible from the jury box, he did not create a record to substantiate that claim by making an appropriate offer of proof"); *State* v. *Woolcock*, 201 Conn. 605, 616–17, 518 A.2d 1377 (1986) (because record contained no evidence that jury was aware of defendant's shackles, "[t]he [defendant] has not carried his burden of providing an appellate record [that] supports his claim of error"); *State* v. *Williams*, 195 Conn. 1, 10, 485 A.2d 570 (1985) ("the record does not indicate . . . [and] the defendant [does not] claim that any offer of

proof was made as to whether the jurors could or did view the restraints when on the defendant").

When, however, "a court, without adequate justification, orders [a] defendant to wear shackles that *will be seen* by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The [s]tate must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." (Emphasis added; internal quotation marks omitted.) *Deck* v. *Missouri*, supra, 544 U.S. 635.

Finally, "[i]n reviewing a shackling claim, our task is to determine whether the court's decision to employ restraints constituted a clear abuse of discretion. . . . While appellate review is greatly aided when a court develops the record by conducting an evidentiary hearing concerning the necessity for restraints, such a hearing is not mandatory. . . . A record in some fashion disclosing the justification for using restraints, however, is essential to meaningful appellate review of a shackling claim. . . . This is particularly so because of the potential for prejudice in the use of shackles. . . . Accordingly, a trial court must ensure that its reasons for ordering the use of restraints are detailed in the record."[2] (Citations omitted; internal quotation marks omitted.) *State* v. *Tweedy*, supra, 219 Conn. 506.

Turning to the present case, we note that the record indicates that the trial court ordered the defendant to remain shackled during trial in accordance with its "standard procedure . . . ." To the extent that the trial court's "standard procedure" represents a general policy of the court favoring the use of leg restraints at trial, even in the absence of a showing that such restraints are necessary, that policy violates the principle that restraints may be used only when there is particularized need to do so, and only when that need is reflected in the record.

Nor is there anything in the record of the present case to suggest that restraining the defendant was reasonably necessary under the circumstances. Although the defendant had been charged with serious crimes of violence, there is nothing in the record to establish that he was a flight risk, that he had exhibited serious behavioral issues or that he otherwise posed a danger to the security of the people in the courtroom. But cf. *Sekou* v. *Warden*, 216 Conn. 678, 692–93, 583 A.2d 1277 (1990) (concluding that, notwithstanding trial court's failure to articulate its reasons for restraining petitioner at his criminal trial, record "amply demonstrate[d]" that nature and duration of restraints employed were reasonably necessary due to petitioner's "history of insubordination and violence in penal institutions, which included an attack on a prison guard with a knife, [his] participation in a prison rebellion," and his destruction of prison property). In the absence of a showing that

the defendant posed a flight or safety risk, there simply was no reason to have him shackled.

Nevertheless, to establish that he was deprived of his right to a fair trial, the defendant, in addition to showing that he was restrained without sufficient cause, also must provide evidence demonstrating that the jury actually saw or otherwise was aware of his restraints.[3] See, e.g., *State* v. *Webb*, supra, 238 Conn. 455. There is no dispute that the defense did not make any offer of proof at trial with respect to whether the jury could or did see the restraints. In fact, defense counsel never renewed or amplified his initial objection after the trial court denied his motion to have the shackles removed. Furthermore, our review of the record reveals no evidence to suggest that the jury actually saw or otherwise knew of the defendant's shackles. In addition, according to the trial court's rectification of the record, the defendant always was seated at the defense table before the jury entered, and he remained there until after the jury left the courtroom. Finally, the fact that the trial court could not recall presiding over a single case in which a jury had been able to observe a defendant in restraints strongly supports the conclusion that the jury in the present case did not see the defendant's shackles. On the present record, therefore, the defendant has failed to establish that the trial court's impropriety in having him shackled during his trial abridged his presumption of innocence.[4]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] Practice Book § 60-2 provides that a reviewing court may, on its own motion, "(1) order a [trial] judge to take any action necessary to complete the trial court record for the proper presentation of appeal . . . ."

[2] We note that the aforementioned principles have long been reflected in our rules of practice. Specifically, Practice Book § 42-46 provides: "(a) Reasonable means of restraint may be employed if the judicial authority finds such restraint reasonably necessary to maintain order. If restraints appear potentially necessary and the circumstances permit, the judicial authority may conduct an evidentiary hearing outside the presence of the jury before ordering such restraints. The judicial authority may rely on information other than that formally admitted into evidence. Such information shall be placed on the record outside the presence of the jury and the defendant given an opportunity to respond to it.

"(b) In ordering the use of restraints or denying a request to remove them, the judicial authority shall detail its reasons on the record outside the presence of the jury. The nature and duration of the restraints employed shall be those reasonably necessary under the circumstances. All reasonable efforts shall be employed to conceal such restraints from the view of the jurors. Upon request, the judicial authority shall instruct the jurors that restraint is not to be considered in assessing the evidence or in the determination of the case."

[3] The defendant contends that, when a trial court makes an erroneous decision to restrain a defendant, and the record in the case is silent as to whether the restraints were visible to the jury, the state, rather than the defendant, has the burden of establishing beyond a reasonable doubt that the defendant's restraints were not seen by the jury. In support of his contention, the defendant relies on *United States* v. *Banegas*, 600 F.3d 342 (5th Cir. 2010), in which the United States Court of Appeals for the Fifth Circuit concluded that requiring the defendant to prove that his restraints were visible to the jury in cases in which the record is silent on the matter "would create the unjust result that, when the record is sparse as to the facts of shackling, the defendant would have to depend on that same sparse

record to prove the negative fact of shackle visibility before the government would have to take up its burden of proving the absence of prejudice." Id., 347. For the following reasons, we are not persuaded by the defendant's argument.

In reaching its conclusion, the court in *Banegas* noted that placing the burden on a defendant "would significantly alter the burden of proof articulated [by the United States Supreme Court] in *Deck* [v. *Missouri*, supra, 544 U.S. 635]." *United States* v. *Banegas*, supra, 600 F.3d 347. A review of the United States Supreme Court's decision in *Deck*, however, convinces us that the court in *Banegas* misinterpreted the holding in *Deck*.

In *Deck*, the petitioner, Carman Deck, was convicted of murdering and robbing an elderly couple. *Deck* v. *Missouri*, supra, 544 U.S. 624–25. On appeal, his death sentence was set aside, and the Missouri Supreme Court ordered a new sentencing proceeding. Id., 625. During that new sentencing proceeding, Deck was shackled with leg irons, handcuffs, and a belly chain. Id. Despite counsel's objection to the restraints, the trial court declined to have them removed, explaining that Deck "[had] been convicted and [would] remain in [leg irons] and a belly chain." (Internal quotation marks omitted.) Id. The penalty phase proceeded with Deck in restraints, and he again was sentenced to death. Id. Deck appealed his death sentence, arguing that his shackling violated both Missouri law and the United States constitution. Id. The Missouri Supreme Court rejected that argument and upheld Deck's death sentence. Id., 625–26.

On appeal to the United States Supreme Court, the state of Missouri claimed that the Missouri Supreme Court properly had found that (1) the record lacked evidence that the jury saw the restraints, (2) the trial court acted within its discretion, and (3) the defendant did not demonstrate that he had suffered prejudice. Id., 634. The United States Supreme Court rejected these arguments. Id., 634–35. With respect to the first contention, the court determined that, contrary to Missouri's assertion, the record in the case "[made] clear that the jury was aware of the shackles." Id., 634. With regard to the second argument, the court concluded that the record "contain[ed] no formal or informal findings" explaining the trial court's reasons for imposing the requirement of shackles beside "the fact that Deck already [had] been convicted." (Internal quotation marks omitted.) Id. On the basis of its rejection of the two foregoing arguments, the court rejected Missouri's final argument, concluding that, when "a court, without adequate justification, orders [a] defendant to wear shackles that *will be seen* by the jury, the defendant need not demonstrate prejudice to make out a due process violation. The [s]tate must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." (Emphasis added; internal quotation marks omitted.) Id., 635.

Thus, *Deck* makes clear that a heightened burden falls on the state when the unwarranted restraints *are visible* to the jury, and not when, as in *Banegas*, the record is silent on the matter. Accordingly, we disagree with the conclusion that the court reached in *Banegas*. We further note that our understanding of the United States Supreme Court's holding in *Deck* is consistent with that of other federal and state courts that have examined the issue. See, e.g., *Mendoza* v. *Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008) ("*Deck*'s facts and holding . . . concerned only visible restraints at trial. The [United States] Supreme Court was careful to repeat this limitation throughout its opinion." [Emphasis omitted.]), cert. denied, 556 U.S. 1188, 129 S. Ct. 1996, 173 L. Ed. 2d 1096 (2009); see also *Ochoa* v. *Workman*, 669 F.3d 1130, 1145 (10th Cir.) ("it is the potential impact on the jury of visible restraints that implicates the fundamental fairness of a jury trial proceeding"), cert. denied,        U.S.       , 133 S. Ct. 321, 184 L. Ed. 2d 190 (2012); *People* v. *Letner*, 50 Cal. 4th 99, 155, 235 P.3d 62, 112 Cal. Rptr. 3d 746 (2010) (*Deck* did not support contention that prosecution was required to disprove visibility when there was no evidence in record that jury observed defendant wearing shackles), cert. denied, 563 U.S. 939, 131 S. Ct. 2143, 179 L. Ed. 2d 897 (2011), and cert. denied sub nom. *Tobin* v. *California*, 563 U.S. 939, 131 S. Ct. 2097, 179 L. Ed. 2d 897 (2011); *Hoang* v. *People*, 323 P.3d 780, 785–86 (Colo.) (when restraints are visible to jurors, prosecution bears burden to prove harmless error, but when it is not apparent from record that jury had observed shackles, defendant must demonstrate visibility), cert. denied,        U.S.       , 135 S. Ct. 233, 190 L. Ed. 2d 175 (2014).

[4] Of course, the defendant may seek to establish that the jury did, in fact, observe him in shackles in connection with a petition for a writ of habeas corpus.