972 F.2d 352
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vincent G. WILLIAMS and Mark J. Clarke, Defendants-Appellants.
 Nos. 91-2420, 91-2421.
 United States Court of Appeals, Seventh Circuit.
 Argued April 10, 1992.
Decided Aug. 17, 1992.
Rehearing and Rehearing En banc Denied in
No. 91-2420 Oct. 15, 1992.
 
 1
 Before POSNER and MANION, Circuit Judges, and BURNS, Senior District Judge*.
 
 ORDER
 
 2
 This case is before us on a consolidated appeal of the convictions of appellants and on the appeal of the sentence imposed on appellant Williams. For the following reasons we affirm the district court.
 
 I. Background
 
 3
 Appellants were convicted following a jury trial on charges of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and carrying firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Williams was also convicted on a charge of illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).
 
 
 4
 Based on the record before us, viewed under the proper standards of review, the following factual history emerges. On August 4, 1990, Kankakee City Police Lieutenant Gerard received a telephone tip from a confidential informant. The informant said that "Jamaican Mark", the street name of appellant Clarke, and another Jamaican man were going to take part in a drug transaction. Lt. Gerard directed two pairs of field officers to place Clarke's residence under surveillance. Lt. Gerard and Detective Trudeau then got in a patrol car and kept in radio contact with the other field officers.
 
 
 5
 Clarke and another man, later identified as appellant Williams, left Clarke's house and drove away in a Toyota Camry. Williams drove and Clarke rode in the front passenger seat. The officers followed them and advised Lt. Gerard of their direction and progress. Lt. Gerard spotted the Toyota Camry just as it stopped. He and detective Trudeau approached on foot. When they were approximately thirty feet away, Lt. Gerard observed Clarke exit the passenger side door with a handgun in his hand.
 
 
 6
 At that time, Gerard directed the two other patrol cars to move in. He shouted "Police. Drop it." Clarke dropped the gun and ran away. Detective Trudeau chased him down and arrested him. Meanwhile, two officers from another patrol car apprehended Williams in the driver's seat of the Toyota.
 
 
 7
 The officers found a gun on the pavement near the passenger side of the car. They found a similar weapon on the back floor board of the car behind the driver's seat and within Williams' reach. In addition, they found two bags of white powder on the front floor board on the passenger's side. The powder was later found to contain cocaine.
 
 
 8
 At the hearing on defendants' motion to suppress, the district court ruled that the officer had probable cause to arrest Clarke for violating Illinois state handgun laws when Gerard saw him get out of the Toyota holding the gun. The subsequent seizure of the guns and cocaine from the car were incident to that arrest, and therefore proper.
 
 
 9
 At trial, the jury found Clarke and Williams guilty of the charges against them. The district court sentenced Clarke to 37 months on the drug count and imposed the mandatory consecutive 60 month sentence for the weapon count. Williams was sentenced to 41 months on the drug count and the mandatory 60 month consecutive sentence on the weapon charge.
 
 II. Motion to Suppress
 
 10
 Appellants first contend that the district court erred by denying their motions to suppress evidence seized at the scene of their arrest. We will not overturn a district court's denial of a motion to suppress unless the decision was clearly erroneous. United States v. Williams, 945 F.2d 192, 195 (7th Cir.1991). We give particular deference to the district court's factual findings; legal determinations will be reviewed de novo. Id. at 195-96. Credibility determinations will be accepted unless the fact finder credited exceedingly improbable testimony. Anderson v. Bessemer City, 470 U.S. 564, 575 (1985), United States v. Cardona-Rivera, 904 F.2d 1149, 1152-53 (7th Cir.1990).
 
 
 11
 The district court credited Lt. Gerard's testimony that he saw Clarke exit the Toyota with a gun in his hand. There is nothing in that testimony or anything in the record that makes it implausible on its face. The failure to find Clarke's finger prints on the gun is mildly surprising, at most. It certainly is not so unlikely as to render Lt. Gerard's testimony exceedingly improbable. The purported "inconsistencies" in the testimony are minor, natural discrepancies we normally expect when witnesses are called upon to recall events from memory. Nothing in the record convinces us that Lt. Gerard's testimony is "exceedingly improbable". Id. at 575. Therefore, we defer to the district court's finding that Lt. Gerard saw Clarke exit the Toyota with a gun in his hand. Anderson v. Bessemer City, 470 U.S. at 575; Cardona-Rivera at 1152-53.
 
 
 12
 We agree with the district court that the officers had probable cause to arrest Clarke for violating Ill.Rev.Stat. ch. 38, para. 24-1, which makes it a crime to carry any pistol in a vehicle. Thus, the subsequent search and seizure of evidence fell well within the "search incident to arrest" exception articulated in Chimel v. California, 395 U.S. 752 (1969).
 
 III. Identity of Confidential Informant
 
 13
 Appellants next contend that the district court erred by refusing to order disclosure of the identity of the confidential informant. The district court must be affirmed unless its denial of the motion was an abuse of discretion. United States v. Garcia, 625 F.2d 162, 165-66 (7th Cir.), cert. denied, 449 U.S. 923 (1980).
 
 
 14
 The public interest in promoting the free flow of information requires that the government enjoy a limited privilege to protect the identity of informants in criminal investigations. Roviaro v. United States, 353 U.S. 53, 62 (1957). The privilege must be balanced against the criminal defendant's need, where need is shown, to identify the informer and elicit testimony where it is necessary to prepare a defense. Id. at 62. The defendant must establish a need for the disclosure. United States v. Tucker, 552 F.2d 202 (7th Cir.1977).
 
 
 15
 Appellants' defense theory, that Gray and Reynolds planted the cocaine in the Toyota to frame Clarke, only demonstrates a need to know the identity of the informant if the informant was Gray or Reynolds.
 
 
 16
 The record is clear that the district court engaged in the balancing required by Roviaro. In this exercise, the district court weighed the government's assertion that the source was sensitive, the defense assertion of need only in the case that the informant was either Gray or Reynolds, and the fact that both Gray and Reynolds were known to the defense, interviewed by them, and available to testify at trial. We are satisfied that the district court did not abuse its discretion by denying disclosure of the informant's identity. Roviaro 353 U.S. at 62; United States v. Garcia, 625 F.2d at 165-66; Tucker, 552 F.2d at 209.
 
 IV. Authenticity of Exhibits
 
 17
 Appellants next contend that exhibits seized at the scene of their arrest were erroneously admitted without proper authentication. The district court's determination that physical exhibits are admissible requires a showing that the exhibits are in substantially the same condition when offered as when the crime was committed. United States v. Aviles, 623 F.2d 1192, 1197 (7th Cir.1980). The district court's conclusion will not be overturned unless we find clear abuse of discretion. Id.; United States v. Lott, 854 F.2d 244, 250 (7th Cir.1988); United States v. Bridges, 499 F.2d 179, 185 (7th Cir.), cert. denied, 419 U.S. 1010 (1974).
 
 
 18
 Appellants challenge the chain of custody for the cards showing fingerprints lifted from the guns and bags of cocaine at the scene of the arrest. The record shows clearly that Sgt. McGovern lifted the prints and identified the exhibit from which each fingerprint was lifted. The record shows that the lifted prints were then examined by fingerprint expert Fracaro. She compared the lifted prints to appellants' fingerprints and was able to match certain ones. It is of no consequence that Fracaro was unable to match specific prints with the exhibits they were lifted from. McGovern did that. Likewise, it is irrelevant that the fingerprint cards corresponding to the different exhibits were sent to Fracaro mixed in a single envelope. Her only job was to identify which of the prints, if any, matched those of appellants. She did that. The fingerprint cards were properly admitted.
 
 
 19
 Appellants also challenge the chain of custody for the bags of cocaine. There were two minor gaps in the government's evidence. The first gap was the period between when McGovern completed dusting the bags for fingerprints at the Kankakee Police Station and when Officer Anderson delivered the bags to the chemist at the crime laboratory. The other gap was the omission of testimony as to how the bags were transported to court from the crime lab.
 
 
 20
 Normally gaps in the chain of custody for an exhibit go to the weight of the evidence; proof of a perfect chain of custody is not required for admissibility at trial. United States v. Lott, 854 F.2d at 250. The government must show only that it took reasonable precautions to preserve the original condition of exhibits, and there is a presumption, absent any evidence to the contrary, that the official acts of public officers are carried out properly. Id., Aviles, 623 F.2d at 1198.
 
 
 21
 The district court concluded that the government had established a sufficient foundation to admit the bags into evidence. There was no evidence of tampering or government wrongdoing to overcome the presumption of regularity. There is no basis in the record before us to conclude that the district court abused its discretion. The exhibits were properly admitted.
 
 V. Motion for Mistrial
 
 22
 Appellant Clarke contends the district court erred by denying his motion for mistrial based on security measures taken by a Deputy U.S. Marshal during trial. The deputy marshal followed Clarke to and from the witness stand, and Clarke argues that this might have led the jury to believe he was a dangerous character.
 
 
 23
 Determining the need for reasonable security measures in a criminal trial, and the manner in which they are implemented, are matters within the discretion of the district court. Harrell v. Israel, 672 F.2d 632, 636 (7th Cir.1982); United States v. Jackson, 549 F.2d 517, 526 (8th Cir.), cert. denied Muhammad v. United States, 430 U.S. 985 (1977), and cert. denied Hudson v. United States, 431 U.S. 923 (1977), and cert. denied Mims v. United States, 431 U.S. 968 (1977). The deputy marshal who escorted Clarke to the stand was wearing plain clothes and there is no evidence that he was displaying weapons. Appellants were not restrained. The jurors were properly instructed on the presumption of innocence. On this record, we cannot conclude that the district court abused its discretion by implementing the security measures used here. Holbrook v. Flynn, 475 U.S. 560, 567 (1986). The motion for mistrial was properly denied.
 
 VI. Motion to Sever
 
 24
 Appellant Clarke contends the district court erred by denying his motion to sever his trial from the trial of appellant Williams. We will not overturn the district court absent a clear showing of abuse of discretion. United States v. Tolliver, 937 F.2d 1183, 1189 (7th Cir.), cert. denied, 112 S.Ct. 329 (1991). The district court should grant a motion for severance only when the defendant can establish actual prejudice. He must show that he could not have a fair trial without severance. United States v. Gonzalez, 933 F.2d 417, 421 (7th Cir.1991).
 
 
 25
 We are satisfied that Clarke waived his motion to sever by failing to renew it at the close of the evidence. United States v. Brown, 870 F.2d 1354, 1359-60 (7th Cir.1989). Nevertheless, we affirm the district court on substantive grounds.
 
 
 26
 This court has followed the formula that severance should only be granted when defenses are so inconsistent that the making of one party's defense would lead to an unjustifiable inference of another defendant's guilt or the acceptance of one party's defense would preclude acquittal of another defendant. United States v. Buljubasic, 808 F.2d 1260, 1263 (7th Cir.), cert. denied, 484 U.S. 815 (1987); United States v. Emond, 935 F.2d 1511, 1514 (7th Cir.1991). Most recently, we have recognized that antagonistic defenses justify severance only when necessary exculpatory evidence is unavailable to a defendant, or highly prejudicial evidence is unavoidable by him, solely because he is being tried jointly with another defendant. United States v. Zafiro, 945 F.2d 881, 884-85 (7th Cir.1991), cert. granted, 112 S.Ct. 1472 (1992).
 
 
 27
 We conclude that the district court did not abuse its discretion under either method of analysis. Throughout the trial, both defendants relied on the theory that Gray or Reynolds placed the cocaine in the car to frame Clarke. During Williams' closing argument, his counsel made comments vaguely hinting that Clarke might have placed the cocaine in the car without Williams' knowledge. In essence, Williams defensive theory was simply that someone else--anyone else, Gray, Reynolds or Clarke, placed the cocaine in the car and Williams was an innocent bystander without knowledge of it. Acceptance of this defense by the jury would not have necessarily precluded acquittal of Clarke. Buljubasic, 808 F.2d at 1263; Emond, 935 F.2d at 1514. Likewise, nothing indicates that joint presentation of Clarke's and Williams' defenses would present any risk that the unavailability of exculpatory evidence or the unavoidability of highly prejudicial evidence would make the jury unable to make reliable determinations of guilt or innocence. Zafiro, 945 F.2d at 886.
 
 VII. Proof Beyond a Reasonable Doubt
 
 28
 Appellants next contend that the evidence was insufficient for the jury to find beyond a reasonable doubt that they knowingly possessed cocaine or weapons. We must affirm the fact finder if the evidence, when viewed in the light most favorable to the government, establishes that any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. United States v. Leibowitz, 857 F.2d 373, 380 (7th Cir.1988), cert. denied, 489 U.S. 1088 (1989).
 
 
 29
 Under this standard the record contains ample evidence against both appellants. The cocaine was found in plain view of any occupant of the Toyota. The guns were also in plain view. One weapon was behind the driver's seat within Williams' reach. The other had Williams' fingerprint on it. Clarke exited the vehicle from the passenger seat where the bags of cocaine were found. He was seen to drop one of the weapons. This evidence was sufficient to convict both appellants.
 
 VIII. Williams' Sentence
 
 30
 Williams contends the district court should have decreased his offense level under United States Sentencing Commission, Guidelines Manual, § 3B1.2(a) ("minimal participant") or under § 3B1.2(b) ("minor participant"). We review the district court's findings for clear error. United States v. Miller, 891 F.2d 1265, 1270-71 (7th Cir.1989). Williams has the burden of showing mitigating factors by a preponderance of the evidence. United States v. Brick, 905 F.2d 1092, 1095 (7th Cir.1990).
 
 
 31
 The district court found that appellants were approximately equally culpable co-venturers. Williams did not present any evidence of mitigating factors. He argues that he was only the driver and points out that the car and weapons belonged to Clarke and that additional evidence was seized from Clarke's residence. These factors, taken together with the evidence in the record of Williams' participation, do not add up to a preponderance of evidence showing that Williams was a "minor" or a "minimal" participant. We find no error.
 
 
 32
 Next Williams contends the district court erred by increasing his criminal history score by two points for two prior diversionary dispositions under state law that resulted in two terms of supervision. The district court added one point for each diversionary disposition pursuant to U.S.S.G. § 4A1.1(c).
 
 
 33
 The treatment of diversionary dispositions for the purposes of a defendant's criminal history score is addressed directly in U.S.S.G. § 4A1.2(f). That section directs the sentencing judge to treat each diversionary disposition as a sentence under § 4A1.1(c) unless it results from juvenile court or is a diversion from judicial process without a finding of guilt. Neither of Williams' prior offenses were juvenile offenses and both involved a finding of guilt. We find that the district court did not err by adding criminal history points.
 
 
 34
 Finally, Williams contends the district court erred by failing to provide particular reasons for departing from the guidelines and for the specific sentence imposed. U.S. v. Ferra, 900 F.2d 1057, 1061-64 (7th Cir.1990). The record is clear that the district court did not depart from the guidelines in Williams' case. In fact, the district court imposed a sentence at the bottom of the appropriate guideline range. We are satisfied that the record reflects an adequate statement of reasons for the specific sentence imposed.
 
 IX. Conclusion
 
 35
 AFFIRMED.
 
 
 
 *
 Judge James M. Burns, Senior District Judge for the District of Oregon, is sitting by designation